## The Fox River Manufacturing Company

### *v.*

## Edward F. Reeves.

1. New trial—*verdict against weight of evidence.* Where the plaintiff sought to recover on the ground that a written contract was changed by a subsequent verbal agreement, whereby, instead of his taking a given number of shares in a building erected by him for the defendant, and his share

of the rents, he was to be paid in cash, and he so testified, but in this was flatly contradicted by the president of the company, and the proof showed that after the alleged change he claimed additional shares in consequence of the increased value of the building, and received his share of the rents, it was *held*, that a verdict in his favor was against the weight of evidence, his testimony being contradicted by his own conduct.

2. SAME—*recovery too large.* In such a case a verdict giving the plaintiff the whole amount of his claim for work and material, without deducting the rents received by him, will be for too large a sum, and can not be sustained. If the contract was changed, he could have no claim for any portion of the rents, and having received them they should be applied in payment of his demand.

3. CONTRACT—*construed.* Where the plaintiff agreed to complete a building for a certain sum, one-half of which was to be paid him in money, and he was to take 41 shares out of 142, which represented the whole interest in the building and grounds, in payment for the balance due him, it was *held*, that when the value of the building was enhanced by certain changes in the plans, for which the plaintiff paid nothing, he had no right to any extra shares representing the enhanced value, but was entitled to receive only those he had contracted for.

4. DEBT—*when it lies.* Debt can only be maintained for a sum certain, or which may be rendered certain by computation. For a refusal to convey shares in a building according to the terms of a contract under seal, when the contract fixes no value to the shares, debt will not lie. Covenant is the appropriate action in such a case.

5. Where the obligor binds himself to pay a fixed sum of money, or to perform some other act, and fails to perform it in the time limited, debt properly lies to recover the sum agreed to be paid.

APPEAL from the Circuit Court of DuPage county ; the Hon. SILVANUS WILCOX, Judge, presiding.

Messrs. WHEATON, SMITH & McDOLE, and Messrs. W. H. WING and CHARLES WHEATON, for the appellants.

Mr. JOHN W. RANSTEAD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee brought debt in the Kane circuit court, and filed the common counts. The plea of the general issue was filed, and the venue was changed to the DuPage circuit court.   It

was agreed that on the trial appellee might introduce any evidence that would be applicable to special counts on the contract of the parties, and that appellants might introduce any evidence that would be proper under special pleas. A trial was had, resulting in a verdict and judgment in favor of plaintiff, for $5132.86. A motion for a new trial was interposed and overruled before the judgment was rendered. Defendants bring the case to this court, on appeal, and assign various errors.

On the trial, appellee introduced and read in evidence, against the objection of defendants, this agreement:

"Agreement made and entered into this 19th day of September, A. D. 1870, by and between The Fox River Manufacturing Company, of the city of Elgin, in Kane county, and State of Illinois, party of the first part, and Edwin F. Reeves, of the same place, party of the second part. Witnesseth, for and in consideration of the payments hereinafter mentioned, to be made, and the covenants, undertakings and agreements to be performed by the said Fox River Manufacturing Company, the said Edwin F. Reeves has agreed and contracted, and by these presents does agree and contract, to and with the said Fox River Manufacturing Company, to erect, build, finish and complete, in a good, careful, skillful and workmanlike manner, and to the satisfaction of Alban B. T. Lynch, architect, a two story block, the first story to be comprised of four stores, the second story to be divided into offices and rooms, in accordance with the plans and specifications of said block made by said Lynch, architect—said plans and specifications being hereby declared and made part of this contract. Said block to be built on the foundations already laid, and to be completed by the said Fox River Manufacturing Company, on the east and west banks of the mill race, and over said race, on part of lot 5, in block 20, in the original town of Elgin, Kane county, Illinois, as laid out by James T. Gifford, said Reeves to furnish all the materials and perform all labor referred to in said plans and specifications, and according to

406      FOX RIVER MAN. CO. *v.* REEVES.      [Sept. T.

Opinion of the Court.

the true intent and meaning thereof. As soon as the foundations above referred to shall have been completed by said company, then said Reeves is to commence the erection of said block; and is to build and inclose the same within 90 days from the completion of said foundation. Said Reeves agrees that he will build said block, as aforesaid, for the sum of $8200—one-half of which amount is to be paid by said company, and the other half by said Reeves. Said company, in consideration of the premises, hereby agree to pay said Reeves the sum of $1000 in 30 days, and $1500 in 60 days from the date hereof, and the balance when said block shall be completed, to the satisfaction of said architect, Lynch. It is hereby agreed that the foundations on which said block is to be erected is $6000, and that when said block shall be erected thereon, the total value of the land, foundations and block will be $14,200, and that the same is to be divided into 142 equal shares, and at the expiration of one year from the date of this contract, said company is to convey and assure to said Reeves a good and sufficient title to 41 shares in said property (the building and lot on which the same shall be built), or shall pay him the sum of $4100, with interest thereon at the rate of ten per cent from the date hereof, at the option of said company; and in the meantime, the rents and profits accruing from said property are to be paid to the respective parties hereto, in proportion to the number of shares held by each, and are to be paid at the end of one year from the date hereof. Whenever accounting shall be had between the parties hereto for that purpose, and thereafter, in the event that title to 41 shares shall be made to said Reeves, as aforesaid, then the rents and profits accruing from said property are to be divided between the said parties *pro rata*, as they are collected. The shares hereinbefore mentioned are $100 each."

The contract was properly executed, so far as the record discloses, nor is there any dispute that all of the cash payments were made according to the terms of the agreement,

and it is not objected that the work was done according to the agreement by appellee; but the entire contest grows out of a dispute as to whether, after the agreement was entered into, the company, with the consent of appellee, elected to pay in money instead of in stock the remaining half of the price of erecting the building—in other words, whether or not the agreement was, by mutual consent, so far changed that the company would pay the remaining $4100 in money instead of stock of the company.

On the trial, in the court below, appellee testified that such a change was made with the president of the company, in the presence of Lawrence and Pease. In this he is flatly contradicted by Goodale, the president, and he is contradicted by his own conduct. In various efforts to settle and arrange the matter, when he was claiming more than 41 shares of stock, in consequence of extra work to the amount of $900 paid to him, the property was agreed to have been enhanced in value to $15,100 instead of the original value of $14,200. He never claimed that he was to be paid in money and not in shares; he only disputed as to the number of shares he was entitled to receive, and when that number was offered he insisted that the company could not transfer that number of unincumbered shares. This conduct on his part speaks volumes against his testimony on the trial.

Again, at the end of the year he received $200 as rents, on his share of the rents of the property. Such conduct is almost conclusive evidence that he understood that he was to receive stock and not money on this last installment. We can not conceive how any sane man would have failed to set up his claim to the money, if it was agreed to be paid to him instead of the shares. His conduct is of itself, independent of the evidence of Goodale, sufficient to render his evidence unworthy of belief; but, when considered in connection with that of the president of the company, it leaves the verdict clearly and palpably against the evidence, and it should have been set aside and a new trial granted.

The verdict is too large, even if appellee's testimony could be taken as true. He had received $200 as rent of his interest in the factory, and it was not deducted. There could surely be no pretense for his holding that sum, even on appellee's theory of the case. He had not earned it, or paid or advanced anything, to entitle him to hold it without accounting for it, even if the latter half was to be paid in money. So, on this ground, the verdict is wrong, and can not, in any event, be sustained.

Then, what number of shares was appellee entitled to receive? The number called for by the contract, and no more. He paid nothing to enhance the value of the property, which was represented by the additional stock of the company. It is true, he did the work, but was fully paid for it. Suppose the plans had been altered so as to increase its value $20,000 instead of the $900, would or could any reasonable and fair man say that he would have, under the agreement, been entitled to $\frac{41}{142}$ parts of the entire property thus enhanced, without his contributing a single dollar to that increased value? We presume not. To so hold would violate all principles of right and justice. The mere statement refutes the claim, and can leave no doubt of its injustice. He was entitled, then, to only 41 shares, as he had paid for or contributed nothing for any more than that number.

If, then, a recovery is sought for the non-conveyance of the shares, will debt lie? To recover, the action would be for a breach of the contract in not conveying the shares, and such a recovery would be measured by the value of the shares that should have been transferred, and as the parties in their agreement have failed to fix its value, it is uncertain, and can only be fixed and ascertained by proof, and hence debt will not lie. That action can only be maintained for a sum certain, or which may be rendered certain by computation. But covenant is the only action that will lie for the recovery of uncertain damages for the breach of a contract under seal. Here, there is no price agreed upon by the parties, nor does

the contract fix any sum that shall be paid in gross or for each separate share, if the company should fail to make the transfer. Their value, and consequently the extent of the damages sustained by appellee, if any, depends entirely on proof of the value of this stock.

The cases referred to by appellee's counsel are not in point, nor are they analogous. In those cases the obligor bound himself to pay a fixed sum of money or to perform some other act, and failing to perform it in the time limited, it was correctly held that debt was a proper remedy to recover the sum agreed to be paid ; but such is not the agreement in this case. But we distinctly state that we find no such breach. The tender was made and refused, and it is for the jury to find, from the evidence, whether the tender was within the time, for the proper number of shares, and whether they were free from incumbrance. On these questions we express no opinion.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*