## Rosenbaum Bros. & Co. *vs.* Jerry Hayes.

Opinon filed May 22nd, 1896.

**Factor's Lien—Delivery of Possession.**

> The lien of a factor is dependent on possession. A delivery of property to a carrier by the owner, to be shipped to another point, not the place of business of the factor, and the taking by the owner from the carrier of a bill of lading in the name of such factor, and forwarding it to him, are not conclusive on the question of the intent of the owner to deliver possession to the factor, where there are other facts in the case tending to show that it was not the purpose of the owner to surrender possession to the factor, but that the object of shipping in the name of the factor was to obtain the benefit of a through rate, which could not be attained if the shipment was made part of the way in the name of the owner, and thereafter the balance of the distance to the place of business of the factor in his name.

Appeal from District Court, Stark County; *Winchester,* J.

Action by Morris Rosenbaum and others, suing as Rosenbaum Bros. & Co., against Jerry Hayes, sheriff of Stark County. Judgment for plaintiffs, and defendant appeals.

Reversed.

*Edgar W. Camp, L. A. Simpson,* and *F. H. Register,* for appellant.

*James G. Campbell,* (*A. B. Melville,* of counsel,) for respondents.

Corliss, J. We are compelled to reverse the judgment in this case for errors in the instructions of the court to the jury. The plaintiffs are seeking to recover in replevin the possession of 5,600 sheep from the defendant, who, as sheriff, seized them on attachment against George M. Beasley & Co. The plaintiffs base their right to possession upon a factor's lien for a general balance due them from Beasley & Co. on account of advances made by them as commission merchants to Beasley & Co. under an agreement that Beasley & Co. were to purchase sheep, and consign them to plaintiffs in the City of Chicago to be sold by plaintiffs, as commission merchants, on account of Beasley & Co.; all the surplus, after reimbursing the plaintiffs for

their advances and expenses in the business, and after paying their commissions on such sales, to be turned over to Beasley & Co. There was evidence tending to prove that on the 11th of April, 1893, Beasley & Co. were, and ever since that day have been, indebted to the plaintiffs in the sum of about $16,000. If at any time before their seizure under the attachment by defendant the sheep in question came to the possession of the plaintiffs under the arrangement between them and Beasley & Co., then there attached to them a factor's lien in favor of plaintiffs for the general balance due them from. Beasley & Co. 1 Jones, Liens, § 418. There was evidence in the case tending to show that the plaintiffs had in fact secured possession of the sheep prior to the levy of the attachment, but on this question of fact there was a controversy between the parties. There was evidence which tended to prove that Beasley & Co. had not in fact parted with their control over the sheep as owners thereof when the sheriff seized them under the attachment against Beasley & Co. The only evidence relied on by plaintiffs to establish a delivery of possession to them as a matter of law was a shipment of the sheep from Rosebud, Mont., to Dickinson, in this state, and the fact that Beasley & Co., when the shipment was made, took from the railroad company, and forwarded to plaintiffs at Chicago, a bill of lading of the property, in which plaintiffs were named as consignees. It is true that there are other facts in the case tending to show a delivery of possession, but there were also facts proven which had a tendency to show that Beasley & Co., by the shipment of the sheep, and the procuring and forwarding to plaintiffs of the bill of lading, did not intend to part with their control over the sheep as owners thereof, but that the purpose in shipping in the name of the plaintiffs was to secure the benefit of a through rate to Chicago on the shipment from Rosebud to Dickinson, it being the purpose of Beasley & Co. ultimately to send on the sheep to plaintiffs at Chicago. By shipping in the name of the plaintiffs, Beasley & Co. could obtain the benefit of the through rate; but could not secure this advantage if they shipped

in their own name to Dickinson, and subsequently, in the name of the plaintiffs, from Dickinson to Chicago. It is not seriously contended that the question of delivery was not a question of fact, provided delivery as a matter of law was not established by the forwarding to plaintiffs of the bill of lading issued in their name. The court, in its charge, repeatedly instructed the jury that the mere fact of the shipment of the sheep in the name of the plaintiffs, and the procuring and forwarding to them of the bill of lading for the sheep, of itself constituted a sufficient delivery to entitle plaintiffs to a factor's lien from the time of such shipment, irrespective of the question whether it was the intention of Beasley & Co. to turn over the property to the plaintiffs. It is unnecessary to set out more than one of these instructions to show how erroneous was the view of the law the jury must have have imbibed from the charge of the court, although as a matter of fact the substance of this particular instruction we here quote was repeated again and again in the charge of the court. The instruction was in the following language: "If you find that there was an agreement or an arrangement between Rosenbaum Bros. & Co., the plaintiffs in this action, made prior to April 11; 1893, and in force at that time, that George M. Beasley & Co. were to purchase sheep with moneys to be advanced by the plaintiffs for the purpose of purchasing sheep, and with the further agreement that the said sheep, when purchased and when ready for market, or when directed by Rosenbaum Bros. & Co., should be shipped to them, to be sold upon commission, and the proceeds applied to pay the moneys so advanced for the purchase of said sheep, and any general balance that might be due at the time of said sale from George M. Beasley & Co. to Rosenbaum Bros. & Co., the plaintiffs, then I charge you that from the date of the delivery of said sheep on board the cars of the Northern Pacific Railroad Company, consigned to the plaintiffs in this action, the plaintiffs had a special property interest in and lien upon said sheep." It is undoubtedly the law that a delivery to a carrier may be made

under such circumstances as to place the property completely within the control of the consignee. If this is done, the lien at once attaches. Meecham. Ag. § 1035; 1 Jones, Liens, § § 460, 461. And even if the consignor might not have intended to surrendor control to the consignee by the delivery to the carrier, yet, if he takes a bill of lading in the name of the consignee, and sends or delivers it to him, and on the strength of this particular bill of lading the factor advances him money, then, to the extent of such advances, the lien would attach. The consignee having relied on the particular bill of lading sent to him by the owner of the property in making the advance, the owner would be estopped, to the extent of such advances, from urging his secret, undisclosed purpose to the prejudice of the consignee. *Holbrook* v. *Wight*, 24 Wend. 168; *Davis* v. *Bradley*, 28 Vt. 118; *Lambeth* v. *Turnbull*, 39 Am. Dec. 536. But where, as in this case, the advances were not made on the strength of the bill of lading, the question is one of intention on the part of the owner of the property at the time of making the shipment. "A delivery of goods to a carrier is undoubtedly a delivery to the factor to whom they are consigned, if the delivery is made with the intention of passing a special property in the goods, and the consignor wholly parts with control of the goods." 1 Jones, Liens, § 462. There is no delivery to the factor unless the owner intended to part with all control over the goods at the time of the shipment, and vest that control in the factor to the extent that factors have a right to exercise control over property consigned to them for sale on commission. If these sheep had been shipped to Chicago, and a bill of lading had been taken in the name of the plaintiffs, and forwarded to them, then, in view of the course of dealing between these parties, there would probably have been a sufficient delivery to the plaintiffs to give them a factor's lien from the time of such shipment. But here the shipment was to an intermediate point, which was not the usual place of delivery to the factors under the arrangement between the parties, but merely a new feeding ground for the sheep. We think that under the

evidence the question of delivery of possession was a question of fact. It is apparent from the instruction above quoted by us that the jury must have been led to believe that the mere fact of the shipment in the name of plaintiffs, followed by the forwarding to them of the bill of lading, was decisive on the question of plaintiff's lien as factors. This was equivalent to an instruction to the jury to find for the plaintiffs, for these facts were not in controversy. It was undisputed that Beasley & Co., had shipped the goods to Dickinson, and had taken out and forwarded to plaintiffs a bill of lading for the sheep, issued in the plaintiffs' name.

But there was still another more prejudicial error in the court's instructions to the jury. They were told that the factor's lien attached from the moment of purchase by Beasley & Co. of the sheep with the moneys of the plaintiffs, sent to them for that purpose. The instruction was not predicated on any theory of ownership of the sheep by plaintiffs, but, on the contrary, it proceeded on the theory that Beasley & Co., in buying the sheep, were buying them for themselves; to be forwarded by them as owners to plaintiffs, to be sold by plaintiffs on commission for Beasley & Co. We will refer to only one of these erroneous instructions, although there are many of the same kind to be found in the charge, which was very long, and embodied many repetitions. It is as follows: "If you find that prior to April 11, 1893, the plaintiffs, Rosenbaum Bros. & Co., and George M. Beasley & Co. had entered into an agreement whereby Rosenbaum Bros. & Co. had advanced to George M. Beasley & Co. the moneys which purchased the sheep in question in this action, upon the promise on the part of George M. Beasley & Co. that sheep should be purchased with such moneys so advanced, and if you find that the sheep in question, or any part thereof, were purchased by the firm of George M. Beasley & Co. with the money so agreed to be advanced, and if you find that there was an agreement between said firm of Rosenbaum Bros. & Co. and George M. Beasley & Co. that the sheep so purchased with the moneys advanced by

the plaintiffs, Rosenbaum Bros. & Co., should be shipped to Rosenbaum Bros. & Co. as directed, then I charge you that Rosenbaum Bros. & Co., from the time of the purchase of said sheep under such arrangement, if any there was, had a special property in the sheep so purchased, which amounted to a lien thereon, and had a right to have said sheep come forward to them whenever they so directed." This instruction proceeded upon a radically unsound view of the law, in that it utterly eliminated from the elements which go to make up a factor's lien the indispensable element of possession, either actual or constructive. Our statute, which is merely declaratory of the common-law rule, declares that the lien of a factor is dependent on possession. Section 4442, Comp. Laws. It is urged that the court did, on the request of counsel for defendant, lay down for the guidance of the jury the correct rules of law applicable to the case. But in view of the fact that the court iterated and reiterated these erroneous views in its charge, we are unable to say that the jury gave less weight to these unsound doctrines than to the isolated enunciation of the correct doctrines, which may have been either forgotten or put aside by the jury as a statement of law, not to be followed by them in deciding the case. If there is any presumption to be indulged under the extraordinary facts of this case, it is that the jury believed that these two erroneous doctrines, which ran persistently through the charge, appearing in various guises nearly a score of times, were the rules which must control them in arriving at a verdict.

The judgment is reversed, and a new trial is ordered. All concur.

### ON REHEARING.

It is urged in the petition for rehearing that the error in the court's charge referred to in the opinion was not prejudicial, inasmuch as the jury found specially that the plaintiffs were in possession of the sheep at the time they were attached. But, so far as we know, the very finding may have been based upon the

erroneous instructions of the trial judge to the effect that the shipment of the sheep in the name of the plaintiffs, followed by the delivery to them of the bill of lading, constituted a delivery of possession as a matter of law. In one of the numerous charges of the same general character the court said: "If you find that the sheep in question were on or about the 11th day of April, 1893, delivered by George M. Beasley & Co. on board the cars on the track of the Northern Pacific Railroad Company at Rosebud, Montana, consigned by a bill of lading in evidence in this case to Rosenbaum Bros. & Co. at Dickinson, then I charge you that such delivery upon the cars aforesaid, and such issuing of the bill of lading, and the delivery thereof to Rosenbaum Bros. & Co., the plaintiffs in this action, constituted a delivery to them of the sheep in question, and they had a right to hold possession thereof until all moneys due by the firm of George M. Beasley & Co. for advances made to George M. Beasley & Co. in the commission business had been fully paid." The court, by this instruction, told the jury that, as a matter of law, the plaintiffs were in possession if the sheep were shipped in the plaintiffs' name, and the bill of lading was delivered to them. We are unable to say that the special finding referred to was not based upon this erroneous statement of the law. All concur.