ADAMS et al. v. CITIZENS' BANK OF TINA, MO.[1]

(Circuit Court of Appeals, Seventh Circuit. January 3, 1898.)

No. 401.

CUSTOM—EQUITABLE LIEN—DECLARATION OF AGENT—PLEADING.

A firm purchased live stock, paying therefor with money borrowed from a bank under a promise that the proceeds of the sale thereof "should come back to the bank," and consigned the same to a commission firm, who, in prior like consignments, had deposited the proceeds of sales to the credit of such bank for the benefit of the consignors, but who applied a portion of the proceeds in this instance to the payment of a note owing to them from the consignors, who authorized such application. Prior to the shipment, an agent of the commission firm stated to the bank. but not in the presence of the consignors, that the proceeds would be deposited in the usual way, but it appeared that the bank did not rely thereon, but upon the good faith previously shown by the commission men. *Held*, that the bank had no equitable lien or interest in either the stock or in the proceeds of the sale, entitling a recovery from the commission firm of the amount retained by them from the proceeds of such sale. Bank v. Gillespie, 11 Sup. Ct. 118, 137 U. S. 411, distinguished.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This suit was brought by the Citizens' Bank of Tina, a corporation of Missouri, against George Adams and John C. Burke, citizens of Illinois, doing business under the name of George Adams & Burke, as commission merchants selling live stock at the stock yards of Chicago. John Parsley and William Markwell. residing at Tina, Mo., were partners, engaged there in purchasing and shipping live stock to the Chicago market for sale, shipping mainly, if not exclusively, to Adams & Burke. Frank Lovell was an agent of Adams & Burke, employed to solicit consignments of stock to that firm for sale. Parsley & Markwell were accustomed to pay for stock which they purchased by means of checks, which commonly were overdrafts, upon the Citizens' Bank, the bank being reimbursed by the net proceeds of sales, which, under instructions to that effect from Parsley & Markwell, Adams & Burke were accustomed to deposit with the Drovers' National Bank of Chicago to the credit of the Citizens' Bank for the use or benefit of Parsley & Markwell. The original bill was amended by striking out the fourth to ninth paragraphs, inclusive, and inserting other or modified averments, and, as amended, the bill charges, in substance, in addition to the facts above stated, that on October 1, 1892, Parsley & Markwell, having purchased of Joe Allamong & Son a number of cattle for the price of $8,012.68, gave in payment a check upon the Citizens' Bank; that, in pursuance of the usual and ordinary course of the business relations which had existed between the bank and Parsley & Markwell and Adams & Burke for several years before, the bank credited Allamong & Son with the amount of the check, and thereby paid them the full price of the stock so sold; that Adams & Burke had notice, before the sale of the stock by

[1] Rehearing denied March 5, 1898.

them in Chicago, that the bank had paid the purchase price; that at the time and before the bank received and paid the check, Lovell, the agent of Adams & Burke, in response to inquiries by the bank, stated that the cattle would sell at Chicago for an amount more than sufficient to repay the bank the amount of the check, and that the stock, consisting of seven car loads of cattle and two car loads of hogs, would be consigned to his principals, Adams & Burke, at the Union Stock Yards, for sale in the usual and ordinary course of business which had obtained and which had been observed and carried out for several years prior to October 1, 1892, between the said firms of George Adams & Burke, Parsley & Markwell, and the bank, in respect to the purchase and shipment by the said firm of Parsley & Markwell of live stock, the proceeds of which purchases and shipments had theretofore uniformly been deposited by the said firm of Adams & Burke to the credit and account and for the use of the bank in the Union Stock Yards National Bank, because Adams & Burke had been notified and had notice that the bank had uniformly during such period advanced the money with which Parsley & Markwell had purchased the live stock so consigned to them for sale aforesaid; that at the same time Lovell said he would accompany the cattle from Tina to the Union Stock Yards; that he would request Adams & Burke to notify the bank of the price at which the sale had been made; and further assured the bank that in the usual course of business which had theretofore obtained and been observed between the bank and the firms named the proceeds of the sale would be deposited by Adams & Burke in the Union Stock Yards National Bank as early as the afternoon of Monday, October 3, 1892; that, relying upon the good faith theretofore observed by Adams & Burke in all transactions between the parties, the Citizens' Bank, on October 1, 1892, paid Allamong & Son the full sum of $8,012.68; that, with full notice of the fact of such payment, derived both from the usual course of business and from Lovell, Adams & Burke, having sold the stock for the net sum of $9,212.68, retained thereof the sum of $5,000, and deposited only the remainder to the credit of the Citizens' Bank. The suit was brought to recover that sum of $5,000. In the original bill it was averred, without reference to the prior course of business, that Lovell, as agent for Adams & Burke, stated and represented to the complainant that, if it would advance the amount of the check to Parsley & Markwell to pay for the cattle and hogs, Adams & Burke, as soon as the sale should be made, would notify the bank of the price received, and would deposit the proceeds, less their commission as brokers, to the credit of the complainant in its correspondent bank at Chicago. The answer of the respondents, to which there was the usual replication, contained explicit denials of the allegations of the bill, and in some particulars affirmative averments, inconsistent with the allegations of the bill. The court pronounced an opinion, which is in the record but has not been reported, and entered, after a recital of facts, the following decree: "It is therefore further ordered, adjudged, and decreed that the said defendants, George Adams and John C. Burke, or one of them, pay to the said complainant, or to its solicitor, the sum of $6,095, being the amount of principal and interest due and owing from said defendants to the said complainant bank, within ten days from the date of entry of this decree, and that the said complainant have and recover of and from said defendants its costs, to be taxed by the clerk of this court; and it is further ordered that the complainant have execution in due form of law therefor. It is further ordered and decreed that upon payment of this decree the complainant, the Citizens' Bank of Tina, surrender to the defendants the note for five thousand dollars ($5,000), dated October 6, 1892, signed by Parsley & Markwell and John Forsythe, and payable to the order of George Adams & Burke, in four (4) or six (6) months from its date, and indorsed by George Adams & Burke without recourse, and that said defendants thereby become entitled to said note, and to hold the same for collection." The assignment of errors contains eight specifications, the first four of which are unavailing, because predicated upon things said to be in the decree, which are not to be found there. The fifth and sixth, in so far as they can be deemed material, are embodied in the eighth, which is to the effect that the court erred in finding the issues and in entering a decree in favor of the complainant. The seventh is that the court erred in not dismissing the bill, the averments thereof showing that there was a complete remedy at law.

Mason B. Loomis, for appellants.

Francis A. Riddle, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The case decided in Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, is broadly different from the present case. "In equity," it was there said, "the Gillespies may properly be considered the owners. They paid for the cattle; the orders for possession, equivalent to bills of sale, were in their name; they controlled the shipments; and, until their money advanced and stipulated profits were realized, they were equitably the owners and in control." No such situation is disclosed here either by averment or by proof. The Citizens' Bank, instead of being in the position of the Gillespies, did not pay for the cattle, did not receive bills of sale or the equivalent, did not control the shipment, and, instead of being the equitable owners of either cattle or proceeds, had simply the legal liability of Parsley & Markwell to repay the money advanced by the bank, in accordance with their agreement, made four or five years before, when they commenced business, that the bank should pay their checks given for stock purchased, and they would "have the proceeds come back to the bank." That, in effect, was to extend credit to Parsley & Markwell, and not to create a lien or equitable interest for the benefit of the bank, either in the live stock purchased or in the proceeds thereof. The inference that no more than this was intended by the parties is further justified by the consideration that Parsley was a man of affairs in close relations with the bank, and that in the course of business adopted, whereby the bank was accustomed to receive prompt notice of sales and of the deposits made of the proceeds, it would receive timely information of any disposition of the proceeds of a sale, contrary to the agreement or custom, as it did in the instance complained of.

It is alleged that Lovell represented to the bank that the consignment and the deposit of the proceeds of sale would be in the usual course of prior business, "because Adams & Burke had been notified and had notice," but it is not averred as a fact that they had notice, "that the bank had uniformly during such period advanced the money," etc.; but, if the direct averment had been made of such notice, it would have meant no more than knowledge that the bank had uniformly given credit to Parsley & Markwell. It is not averred, and there is no proof, that Adams & Burke had notice of the agreement of Parsley & Markwell with the bank that they would have the proceeds of sales come back to the bank. Their custom was, it is true, under supposed directions from Parsley & Markwell, to deposit the net proceeds of sales in the Drovers' National Bank to the credit of the Citizens' Bank, but it was done for the use or subject to the order of Parsley & Markwell, and there was nothing in the course of the business, from their standpoint, by which they were required to infer an agreement, if there had been one, which gave the bank an

interest in or lien upon the proceeds of a sale before the deposit was made.

In respect to the particular shipment in question, while it appears that the bank made inquiries of Lovell, and obtained of him statements which, if he had the requisite authority to bind them, might be deemed to show an agreement by Adams & Burke to deposit in the usual way the proceeds of the pending consignment, it is to be observed that Parsley & Markwell were not present, nor, so far as it appears, cognizant of what was said between the cashier of the bank and Lovell; and without their participation it would seem to have been impossible that, by reason of anything said by Lovell, the bank should have acquired a special interest in the proceeds of the transaction. Besides, it is evident on the averments of the bill, that whatever assurance Lovell gave was a matter of opinion, based on the custom of business, and was not a promise that the proceeds of this consignment should be deposited to the credit of the bank. The bank relied on no such promise, but solely, as it is alleged, "upon the good faith theretofore observed by Adams & Burke." It is beyond question that the cashier, who acted for the bank in the premises, expected that the proceeds of the consignment would be deposited to the credit of his bank, and that Lovell knew of that expectation; but it is at the same time true that the bank had no lien upon the cattle, or control of the shipment, and therefore had no equitable ground for pursuing the proceeds of the sale into the hands of Adams & Burke, who applied the amount in controversy to the payment of an obligation which they held against Parsley & Markwell, who had authorized the application. That our conclusion involves no inequity is shown by the subsequent conduct of the bank, and other considerations. The bank was informed of the alleged misappropriation within two or three days thereafter, but made no complaint, though the opportunity to do so to Lovell in person was frequent, gave no notice of its claim upon the money, and made no demand for it, until the middle of the ensuing May. On the contrary, it made complaint to Markwell, and urged him to replace the money, and, Markwell having brought to the bank, or to the cashier, a note for $5,000, signed by Parsley & Markwell and John Forsythe, payable to the order of Adams & Burke, dated October 6, 1892, the bank on the same day made a draft on Adams & Burke, and sent the note and draft together to them at Chicago, on the statement of Markwell that, if that were done, he would furnish the money to pay the draft, implying that he would obtain the money of Adams & Burke, as a new loan upon the note. The note and draft were returned to the bank, Adams & Burke declining to make the loan, though assured of Forsythe's pecuniary responsibility, which is unquestioned. Afterwards, at the request of some one, presumably an agent of the bank, Adams & Burke indorsed the note without recourse, and the bank holds it as collateral security for the liability of Parsley & Markwell to the bank. There is no basis in the pleadings, nor, as we conceive, in equity, for that part of the decree which directs the surrender of the note to Adams & Burke. It never became theirs. They refused to accept it, and, if returned to

them under the decree, it is far from certain that they could enforce payment. If the Citizens' Bank had given prompt notice of their claim upon the money, the appellants might have been able to secure payment of their demand against Parsley & Markwell in other ways not now available. The course taken by the bank was equivalent to a concession, if not a representation, that they had no such right as they now assert. The decree below is reversed, and the cause remanded, with direction to dismiss the bill at the cost of the appellee.