STATE, Respondent, v. DANSKY, Appellant

(298 N. W. 26.)

(File No. 8395.   Opinion filed May 13, 1941.)

E. J. Turner and Frank R. McKenna, both of Sisseton, for Appellant.

Leo A. Temmey, Atty. Gen., Charles P. Warren, Asst. Atty. Gen., and Alan L. Austin, State's Atty., of Watertown, for Respondent.

ROBERTS, J. Defendant was accused and upon trial was found guilty of the crime of embezzlement. He has appealed from the judgment of conviction.

The substance of the information is that on or about January 16, 1940, defendant drew a draft upon Nick Zirbes and Ray McFarland, co-partners doing business under the name of the South Dakota Livestock Sales Company at Watertown, South Dakota, for the sum of $800; that the draft was made payable to the First National Bank of Wilmot, South Dakota, and was in due course accepted and paid; that the money was to be used to purchase cattle for shipment and delivery to the sales pavilion operated by Zirbes and McFarland; and that defendant purchased cattle as a trustee and thereafter converted to his own use and embezzled the cattle "so in his possession and in trust for the said Nick Zirbes and Ray McFarland by delivering and selling said cattle to other persons, firms or corporations, outside of the State of South Dakota, contrary to the terms of said trust with which the said cattle were impressed, in that they were to be delivered only to the said Nick Zirbes and Ray McFarland, co-partners doing business under the name and style of South Dakota Livestock Sales Company at its sales pavilion at Watertown, Codington County, South Dakota."

The prosecution is based on SDC 13.4005, which reads in part as follows: "If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator, or collector, or being otherwise intrusted with or having in his control property for the use of any other person or persons or for any public or benevolent purpose, fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with the fraudulent intent to appropriate it to such use or purpose, and any contractor who appropriates money paid to him for any use or purpose other than that for which he received it is guilty of embezzlement * * *."

It is contended that the evidence is insufficient to sustain the verdict and the judgment for the reason that it fails

to disclose the existence between the South Dakota Livestock Sales Company and the defendant of the fiduciary relation necessary to constitute the crime of embezzlement.

The business transactions, in so far as they can be deemed material, between defendant and Nick Zirbes and Ray McFarland, doing business under the name of the South Dakota Livestock Sales Company, began in June, 1939. Defendant, residing at Wilmot, South Dakota, was engaged in buying and selling livestock. The sales company having agreed to make advances to enable defendant to purchase livestock for consignment to it wrote the following letter, dated June, 1939, to the First National Bank of Wilmot: "Joe Dansky can draw a draft up to $1500 for purchase of live stock to be delivered to the South Dakota Livestock Sales Company, Watertown, South Dakota."

The sales company wrote another letter dated June 16, 1939, to the bank as follows: "Joe Dansky draft is O. K. up to $1500 each week for the purchase of live stock to be delivered to the South Dakota Livestock Sales Company."

There was attached to this letter a memorandum addressed to the cashier of the bank and signed by Nick Zirbes, which reads: "Make that so Joe Dansky can draw on his cattle on Saturday after the sale here. Then we can keep the deal straight. Pin this note to your letter."

This arrangement continued until January 19, 1940, and during this period of seven months the advances totaled approximately $79,000. In accordance with this agreement, the bank credited the account of the defendant with the advances to meet the payment of checks given by defendant for purchase of livestock. Consignments in the usual and ordinary course of the business relations between the defendant and the sales company were made to the latter at Watertown for its sale each Saturday and the sales company reimbursed itself from proceeds of sales for advances, commissions and other expenses and issued a check to the defendant for the balance, if any. In case the proceeds of sale were insufficient to cover these items, defendant made settlement with the sales company.

Nick Zirbes testified concerning the agreement between the sales company and the defendant. The following is quoted from his testimony:

"Q. During the course of your business did you become acquainted with the defendant, Joe Dansky? A. Yes. * * *

"Q. At sometime during the summer of 1939 did he approach you as to making some arrangement whereby he could draw drafts against the cattle he was bringing in? A. Yes.

"Q. What kind of an arrangement did you make with him? A. To draw a draft on the sales company for the amount of the cattle in the shipment.

"Q. Explain how that works. A. Well, if he has the cattle bought, he goes to the bank and draws a draft on the sales company. * * *

"Q. After you issued those letters dated June 9th, and June 16th, did you go along each week permitting drafts to be drawn against cattle delivered to you by Joe Dansky? A. Yes.

"Q. Did you continue that practice for several months? A. Yes.

"Q. Up until how long ago? A. Until about the first or second week in January. * * *

"Q. When phone calls were used to authorize additional amounts as the $3000 and $3500 drafts that appeared in this group of drafts identified here, was that ever authorized for any other purpose than the purchase of cattle to be delivered to the livestock sales pavilion? A. No. * * *

"Q. After you deducted what he owed you for the drafts and after you deducted the commission and feed charges, who would get what was over? A. Joe Dansky.

"Q. That would be his profit in the deal? A. Yes."

On cross-examination this witness testified:

"Q. Under that arrangement he took the money and bought the cattle, shipped them into the yards, and if there was a profit he took it and if there was a loss he paid it? A. Yes, sir. * * *

"Q. How long did he work for you under that arrangement? A. He never worked for me, your honor, he worked for himself.

"Q. These were his cattle, and you say he worked for himself? A. That is the way I take it. He was buying cattle under this arrangement about a year now. * * *

"Q. You testify when there would be a shortage, that is when the cattle would fail to bring the amount that had been advanced that week, Joe would give you a check for it? A. He paid cash and checks both.

"Q. You have had transactions like that? A. Yes.

"Q. Where he personally gave you a check for the difference from what he drew that week and what was credited by the sale of the cattle? A. Yes.

"Q. Those checks were always drawn on the Wilmot bank? A. Yes. * * *

"Q. The bank account there in Wilmot, was that Joe's account or was that your account? A. I didn't have no bank account in Wilmot.

"Q. That was Joe Dansky's account? A. Yes."

■ The complaint does not charge nor does the evidence show that defendant appropriated and converted the money of the South Dakota Livestock Sales Company. The information charges that defendant purchased cattle with money received from the sales company as a trustee and that he converted and embezzled the cattle by selling them to persons outside the state, contrary to the terms of the trust agreement. We may for the purpose of this appeal accept the view of the state that the evidence is sufficient to show that defendant purchased cattle with money derived from a draft drawn on the South Dakota Livestock Sales Company and that defendant did not deliver the cattle to the sales company, but sold them elsewhere. But this did not render defendant guilty of embezzlement. To constitute the crime of embezzlement, there must exist a fiduciary relation between the accused and the persons injured of the character mentioned in the statute and the alleged subject of the embezzlement must be the property of another

acquired by reason of the fiduciary relation. SDC 13.4005; State v. Reddick, 2 S. D. 124, 48 N. W. 846.

The theory of the state is that the money advanced to the defendant was for a specific and definite purpose and that the relation of debtor and creditor did not exist, but rather that of trustee and cestui que trust. The facts are uncontroverted that the agreement between the sales company and the defendant was that the former would furnish funds for the purpose of buying cattle; that the defendant would make consignments of cattle purchased to the sales company to be sold; that the sales company was to receive reimbursement for advances, commissions and expenses from proceeds of sale; and that the sales company was not to share in the profits, if any arising from the sales. Nick Zirbes testified that the defendant was not employed by the sales company; that the sales company did not place the advances in the hands of the defendant as its money; and that the defendant was the owner of cattle purchased with the funds furnished by the sales company. It is apparent that the relation of defendant to the sales company was not that of a trustee, and that the sales company was not the equitable owner of the cattle purchased by defendant. Cf. Adams v. Citizens' Bank, 7 Cir., 84 F. 270; Rosenbaum Bros. & Co. v. Hayes, 5 N. D. 476, 67 N. W. 951. We need not undertake to determine whether defendant was guilty of any other crime. Under the facts and circumstances here presented, he did not commit the crime of embezzlement.

The judgment is reversed and the cause is remanded, with directions to discharge the defendant.

All the Judges concur.