GEORGE H. FULLER, Plaintiff and Respondent, v. NORTHERN PACIFIC ELEVATOR COMPANY, Defendant and Appellant.

**Review on Appeal—Sufficiency of Evidence.**

 1. The conflict in the evidence that prohibits a court from interfering with the verdict of a jury on a question of fact should be a substantial and not an illusory conflict.

 2. Whenever an appellate court conscientiously and irresistibly reaches the conclusion that a verdict is against the truth and the undoubted weight of the submitted evidence, and could only have been reached by the failure on the part of the jury to exercise an unbiased and unprejudiced judgment, such court should unhesitatingly reverse the order of the trial court refusing to vacate such verdict.

(Opinion Filed Nov. 7, 1891.)

*A*PPEAL from district court, Pembina county; Hon. CHARLES F. TEMPLETON, Judge.

*A. C. Davis*, for appellant. *W. J. Kneeshaw*, for respondent.

Action by George H. Fuller against the Northern Pacific Elevator Company for services rendered. Judgment for plaintiff. Defendant appeals. Reversed.

The opinion of the court was delivered by

BARTHOLOMEW, J. This action was brought to recover an alleged balance due on a contract of service. Plaintiff alleges that defendant employed him to work and labor for it, and take charge of one of its elevators for a term of one year, at a monthly salary of $50, commencing August 15, 1889, and that

he worked for one year under the contract, but that defendant paid him for seven months only, and he asks judgment for the balance.   The defendant admits a hiring at $50 per month, but alleges that it was for no definite time, and that plaintiff was discharged at the end of seven months.  The contract was made by correspondence, and the trial judge instructed the jury that the contract was for no definite period, and left it to them to say how long the plaintiff worked for the defendant under the contract.   There was a verdict for plaintiff for $250.   Defendant moved for a new trial on the ground that there was no evidence to warrant the jury in finding that plaintiff worked for any period longer than seven months.   Motion was denied, and defendant appeals, and assigns this denial as error.   There is no question in the case except a question of fact.   The learned attorney for the respondent makes no attempt in this court to defend the verdict further than to invoke for its protection the rule which prohibits courts from interfering with the verdict of a jury on matters of fact where there is a conflict in the testimony.   This court has frequently adhered to that rule.   Observance of the rule is absolutely necessary for the proper discharge of the separate functions of the court and jury.   But an abuse of the rule is usually followed by a failure of justice. It is not the duty of any court, nor has it the right, to close its eyes to obvious facts.   Courts were instituted to promote justice, and not to perpetuate error.   A court may not substitute its judgment for that of the jury, but it should say whether or not the judgment of the jury has been fairly and impartially exercised, or whether or not the result shows the unmistakable presence of passion, or prejudice, or a disregard of the evidence submitted.   Appellate courts have been cautious and reluctant about disturbing the verdict of a jury on questions of fact, but to prevent a miscarriage of justice they were forced to abandon the old rule as to a *scintilla* of evidence, and adopt the safer and more reasonable rule that now prevails almost universally, and which permits and requires a court to set aside a verdict that the court considers wrong, unless there be a substantial conflict in the evidence.   Whenever an appellate court conscientiously and irresistibly reaches the conclusion that a ver-

dict is against the truth and the undoubted weight of evidence, and could only have been reached through passion or prejudice, or a failure to exercise a sound and unbiased judgment on the part of the jury, such court should unhesitatingly reverse the ruling of the trial court refusing to vacate such verdict. The following are some of the cases that have covered this ground: Reynolds v. Lambert, 69 Ill. 495; Manufacturing Co. v. Reeves, 68 Ill. 403; Blake v. McMullen, 91 Ill. 32; Branson v. Caruthers, 49 Cal. 374; Heifrich v. Railroad Co. (Utah), 26 Pac. Rep. 295; Lester v. Sallack, 31 Iowa 477; McKay v. Thornington, 15 Iowa 25; Carlin v. Railroad Co. 37 Iowa 316; Reid v. Colby, 26 Neb. 469, 42 N. W. Rep. 485.

In this case the correspondence shows that plaintiff desired to be employed by defendant for a year, but defendant expressly refused to contract for any specified length of time, but did state that, if plaintiff could handle at the elevator, of which he was to have charge, a certain amount of wheat, the defendant could afford to pay him $600 for so doing. Plaintiff had charge of the elevator from August 15, 1889, until March 15 or 17, 1890. At that time, according to plaintiff's testimony, there was but little wheat left tributary to that station—about one car-load scattered around among the farmers. Plaintiff had handled about two-fifths of the specified amount, for the handling of which defendant had said it could afford to pay him $600. About the close of each month plaintiff received a check from the defendant's Minneapolis office for the amount of his month's wages. About March 17, 1890, a general agent of defendant visited plaintiff for the purpose of closing the elevator. The agent testifies that he told plaintiff that he had come to close the house; that he ordered all the grain shipped out at once, which was done; that he took away all the books and all of the money, except $50, which plaintiff retained as salary for the past month, and left the key with plaintiff. Plaintiff in his testimony admits that the agent said he came to close the house; admits that the grain was shipped out and the books and money taken away; but he says that the agent did not close the house, because he (plaintiff) told the agent he was hired for a year—a statement which he ought to have known

was false, although he testified to it on the stand prior to the production of the letters.     He also testifies that the agent said he thought the books would be returned, though for what purpose is not apparent.     He also testifies generally that he was not discharged, but that is a conclusion which the law will draw from what was said and done.     Plaintiff does not claim to have performed any specific work for defendant after that time, but says he was ready and willing to work.     No specific words were necessary to constitute a discharge.     If by what defendant said and did it intended to discharge plaintiff, and plaintiff so understood it, that was enough, and all that could be accomplished by any language.     This plaintiff was hired for an indefinite time for the purpose of buying and receiving and shipping wheat for defendant at a certain elevator.     By the action of the agent he was left without a penny to purchase wheat, without a book in which to record a transaction, and there was practically no wheat in the country to be purchased, and he knew it.     The agent told him he came to close the house.     It is difficult to conceive how he could have had a more emphatic notification that the defendant no longer required his services as a wheat buyer at that station.     That he did so understand it is perfectly clear from what followed.     Prior to that time he had been required to forward to the home office what were called daily reports.     After that he made no such reports, nor were any required of him.     Prior to that time he had received his salary promptly at the end of every month.     After that time he received no salary, nor did he ask for any, or in any manner mention the subject of salary until after the year had expired, when, without asking for any explanation and without any salary having been refused, he demanded five months' pay, and accompanied his demand with a threat to sue, this furnishing strong evidence that he expected his claim to be denied; and upon what possible ground could he expect such denial, except that he understood the defendant to consider him discharged?     Some time during the season he bought that scattered car-load of wheat in his own name, and shipped it in his own name, consigned to defendant, and it was sold on his account, and an account of sale rendered to him.     Giving the broadest scope to plain-

tiff's testimony, he swears that the elevator was not closed, because he imposed a false statement upon the agent sent there to close it. To that statement—shown by the correspondence to be absolutely false—he susequently swears positively. These circumstances tend to discredit him. The agent testifies that the house was closed and plaintiff discharged. All of plaintiff's subsequent acts are consistent with that theory, and cannot possibly be reconciled with the opposite theory. If plaintiff honestly believed himself still in the employment and pay of the defendant, good faith and common integrity, under the circumstances, required him to so notify it. On the contrary, he was scrupulously careful to convey no such impression. There is no substantial conflict in the evidence. Some stress is laid upon the fact that the agent left the key to the elevator with plaintiff. The question was asked the general agent: "How did you come to leave him the key of the house?" He replied: "The same as we do with other agents when we close a house." Had the purpose of the agent been to terminate a tenancy, the leaving of the key with plaintiff would have been significant. But, where an elevator building was to stand closed for several months, it would seem a most natural, if not necessary, thing to leave the key with some one in the immediate vicinity, to be had in case of fire or any other accident to the building; and it would seem very natural, too, that the key should be left with the party who had for two seasons, as the evidence shows, acted as agent for the owner of the building. We do not deem the matter of leaving the key of any weight as bearing upon the question of plaintiff's discharge. As we are clear that this verdict has no sufficient evidence to support it, and is an injustice to defendant, we are compelled, however reluctant we may be, to direct the lower court to set the same aside, and order a new trial. Reversed. All concur.