(79 N. W. Rep. 985.)

---

## MORRIS ROSENBAUM, *et al. vs.* JERRY HAYES.

Opinion filed June 29, 1899.

### Factor's Lien—Waiver.

The defendant, as sheriff, seized certain sheep on writ of attachment against the property of B. & Co. Plaintiffs sued the sheriff in replevin for the sheep, and alleged that, as agents and factors of B. & Co., they had made large advances of money to said B. & Co., and that they were in possession of said property as such factors, and had a lien thereon for such advances. On the first trial on this complaint the jury disagreed. At the close of the evidence upon the second trial the court intimated that it might find it necessary to direct a verdict for defendant; whereupon plaintiffs, while insisting that the complaint was sufficient and supported by the evidence, yet, to avoid such ruling, asked and obtained leave to amend by pleading ownership as to a portion of the property. Subsequently they served a proposed amended answer embodying such claim. Defendant in the meantime served notice of an application for an order setting aside the order allowing the amendment. While this was pending,

plaintiffs withdrew their proposed amendment, and offered another not claiming ownership. Ultimately the court set aside its order granting leave to amend and denying any amendment. *Held* that, by pleading or offering to plead ownership under the circumstances, plaintiffs did not waive their right to insist upon a factor's lien.

### Factor's Lien Dependent Upon Possession.

A factor's lien, being dependent upon possession, will be lost by any voluntary surrender of such possession whereby the factor loses control of the property; and where the factor knowingly permitted the owner to take the property in his possession for several weeks, and treat it as his own and in his own interest, and largely denude it of value, and ship a portion of it in his own name, the law will conclusively presume that the factor's lien was lost.

### Possession a Question of Fact.

But, if thereafter the remnant of the property be again placed in the hands of the factors as such, the lien will again attach, and, under the evidence in this case, it is *held* that plaintiffs were entitled to go to the jury upon the question of whether or not they were in possession of the property at the time of its seizure by defendant.

Appeal from District Court, Morton County; *Winchester,* J.

Action by Morris Rosenbaum and others against Jerry Hayes, as sheriff of Stark county. Judgment for defendant, and plaintiffs appeal.

Reversed.

*A. B. Melville, J. G. Campbell,* and *Ball, Watson & Maclay,* for appellants.

It has once been held in this case that under the evidence the question of delivery of possession was a question of fact. *Rosenbaum* v. *Hayes,* 5 N. D. 477. Defendant's motion for a directed verdict was equivalent to a demurrer to the evidence, and the rule in such cases is well settled. *Cameron* v. *The Great Northern Railway,* 8 N. D. 124, 77 N. W. Rep. 1016. It was not necessary to show the authority of the agent of the railroad company to issue the bill of lading even as against the company. A fortiori it was not necessary as against third persons. *Hanson* v. *Ry. Co.,* 41 N. W. Rep. 529; *Brooks* v. *Rd. Co.,* 21 Am. & Eng. R. R. Cas. 64. The bill of lading was admissible even though not authorized. *Prince* v. *Ry. Co.,* 101 Mass. 542; *Bryant* v. *Nix,* 4 M. & W. 775. It was error for the Court to strike out the drafts admitted in evidence to show payment. 1 Greenl. on Ev. § 38; 2 Greenl. on Ev. § § 475, 518; 18 Am. & Eng. Enc. L. 206; *State* v. *Brooks,* 52 N. W. Rep. 240; *Peavey* v. *Hovey,* 20 N. W. Rep. 272; *Baring* v. *Clark,* 19 Pick. 220. There never was a waiver of the factor's lien or an election to rely on the claim of ownership as against the attachment. But the claim of a factor's lien was not inconsistent with a claim of ownership if the latter claim failed through lack of proof of notice. *Holbrook* v. *Wight,* 35 Am. Dec. 610. Even if the claims are inconsistent plaintiffs made their election when they brought this action claiming under a factor's lien. 7 Enc. Pl. & Pr. 364, n. 1.

Election of remedies or waiver of lien is a defense which must be pleaded in order to be available. Rev. Codes, 5273; *Roberge* v. *Winnie,* 39 N. E. Rep. 932; *Nysewander* v. *Lowman,* 24 N. E. Rep. 355. Words, unless designed to influence the course of a party concerned and actually having that effect, will not constitute election. 7 Enc. Pl. & Pr. 367.

*Alexander Hughes, James B. Kerr,* and *George W. Newton,* for respondent.

The allegation that the sheep were attached and that they were levied upon by virtue of a writ of attachment is, in legal effect, an admission that the writ was issued in due course of law and that all the preliminary conditions to its issue existed and were complied with. *Bowersock* v. *Adams,* 55 Kan. 681; *Carpenter* v. *Sherman,* 35 Wis. 109; *Remington* v. *Benoit,* 36 Atl. Rep. 718. When a public officer has done an act which, if certain preliminary conditions have not been complied with, is illegal, it will be presumed that such preliminary conditions were complied with. Best on Ev. page 657, n. 1. One who claims that any such pre-requisite did not exist must affirmatively show the fact. *Nofire* v. *U. S.,* 164 U. S. 657, 17 Sup. Ct. Rep. 212; *Valley Township* v. *Bridge Co.,* 4 Kan. App. 622; *Board of Education* v. *Boyce,* 47 Pac. Rep. 1090; Ch. 110, Subd. 15 of Sec. 3, Laws 1897, page 178; *Knox County* v. *Bank,* 147 U. S. 91, 13 Sup. Ct. Rep. 267; *Long* v. *Rush,* 47 N. E. Rep. 156; *Carpenter* v. *Scott,* 53 N. W. Rep. 329; *Naslen* v. *Haynes,* 2 Nev. 53; *Didley* v. *Sherman,* 2 Nev. 67. A record is substantially a written history of the proceedings from the beginning to the end of a case. *United States* v. *Taylor,* 147 U. S. 698; In re *Bennett,* 84 Fed. Rep. 326. Courts take judicial notice of their own records and judgments. Subd. 19, Sec. 2, Ch. 65, Laws 1897; *State* v. *Stevens,* 56 Kan. 723; *State* v. *Bowen,* 16 Kan., 475; In re Bennett, 84 Fed. Rep. 327; *Poole* v. *Leroy,* 70 Ia. 275; *Pittel* v. *Ins. Co.,* 86 Fed. Rep. 255; *Kimball* v. *J. S. M. Co.,* 9 Col. 349; *Allen* v. *Swoope,* 44 S. W. Rep. 78; *Cent. Trust Co.* v. *Asherville,* 72 Fed. Rep. 365; *Bruckel* v. *State,* 19 Wis. 567. They may take notice of other records in the court, and are not bound to limit judicial notice to records in the case on trial. *Denny* v. *State,* 144 Ind. 517; *Fredericks* v. *Daniels,* 6 Mont. 462; *Washington Ry. Co.* v. *Ry Co.,* 160 U. S. 77; *Treat* v. *Dunham,* 41 N. W. Rep. 876. It is therefore incumbent upon this Court to take judicial notice of its findings and decision in *Rosenbaum* v. *Hayes,* 5 N. D. 476, where the Court find that the sheep in question were taken in replevin from Jerry Hayes who seized them as sheriff on attachment. Also in the case of *Ganz* v. *Beasley,* 4 N. D. 140, where the Court find that the defendants made a general appearance in that action, and that Joseph Ganz made and filed affidavit for attachment, that upon an attachment duly sued out Jerry Hayes as sheriff seized the sheep. The settled case on the last appeal (5 N. D. 476) is a record of the District Court in this

action, (Subd. 2, § 5489 Rev. Codes) and is made a part of the record in this appeal. It appears therefrom W. W. Beasley & Sons are the same firm as George M. Beasley & Co. That Jerry Hayes as sheriff attached at the suit of Ganz in 1893, as the property of Beasleys 5,600 sheep. Courts take notice of all prior proceedings in the case. Subd. 13, § 2, Ch. 65, Laws 1897. The word "proceedings" here means any step taken by a suitor to obtain the interposition or action of the court. *Irwin* v. *Bank,* 6 Ohio St. 81; *Dea* v. *Washington Co.,* 3 Neb. 118; *Wilson* v. *Mackin,* 7 Neb. 50; *State* v. *Stevens,* 46 Kan. 720. The papers in the attachment suit are sufficient prima facie evidence of indebtedness in action against the sheriff by a third party. *Treat* v. *Dunham,* 41 N. W. Rep. 876; *Howard* v. *Dwight,* 66 N. W. Rep. 935; *Hall* v. *Stryker,* 27 N. Y. 45; *Rinchey* v. *Stryker,* 28 N. Y. 45; *Fuller* v. *Sears,* 5 Vt. 527. The Court should inform the jury of facts of which it takes judicial notice. *State* v. *Stevens,* 56 Kan. 723. The sheep were not entrusted to appellants as factors in the due course of business. The fact that Beasley accompanied the sheep when shipped and unloaded them at Dickinson, disproves that they were in the possession of the railroad company as agent for plaintiff. Edwards on Bailments, 573; Hutchinson on Carriers, § 217; *Ill. Cent. Ry. Co.* v. *Morrison,* 19 Ill. App. 136; *Terre Haute & L. Ry. Co.* v. *Sherwood,* 132 Ind. 129; *Heller* v. *Ry. Co.,* 109 Mich. 53; 4 Elliott on Rys. § 1549-1552; *Burger* v. *Ry. Co.,* 75 N. W. Rep. 192; *Grieve* v. *Ry. Co.,* 74 N. W. Rep. 193; *Clark* v. *Ry. Co.,* 64 Mo. 240. The terms of the bills of lading disprove plaintiffs' contention. Porter on Bills of Lading, § 421, 424. The bill of lading could not represent the first train load of sheep because they were transported, unloaded and taken onto the range before the bill was made. Porter on Bills of Lading, § 424-425. The sheep were herded together on the range and no attempt was made to identify those included in the second shipment, to establish a lien thereon. Scheuler on Per. Prop. § 47; *Hamilton* v. *Robinson,* 8 Md. 321; *Foster* v. *Warner,* 49 Mich. 643; *McDowell* v. *Russell,* 37 Pa. St. 164; *Rosenberg* v. *Thompson,* 8 S. W. Rep. 895; *Kelley* v. *Kelley,* 77 Me. 135; *Robinson* v. *Holt,* 39 N. H. 557. The herding of the sheep on the range by herders employed by plaintiffs was not sufficient to create a factor's lien in their favor. 2 Kent's Com. 637; 2 Par. on Conts. (8th Ed.) 99; *Dixon* v. *Stansfield,* 10 C. B. 399; *Thacher* v. *Moors,* 134 Mass. 156. The herders were employed by plaintiffs through Beasley as agent. Beasley was not competent as the agent of plaintiffs to invest plaintiffs with possession by engaging herders on their behalf. *Wordall* v. *Smith,* 1 Camp. 333. The rule as to the change of possession from the principal to the factor and the continued possession necessary to protect the factor against an attachment by a creditor of the principal is the same as in the sale of personal property under a statute making such sales fraudulent unless accompanied and followed by an actual and continued change of possession. *Mc-*

*Farland* v. *Wheeler,* 26 Wend. 467; *Dook* v. *Brubaker,* 1 Nev. 185; *State* v. *Benham,* 84 N. Y. 638; *Parker* v. *Kendrick,* 29 Vt. 390; *Brunswick* v. *McClay,* 7 Neb. 137; *Rosenbaum* v. *Hayes,* 5 N. D. 479. The change of possession necessary to protect a sale of chattels against creditors of the vendor must be open, notorious, actual, visible, unequivocal, substantial and continued. *Claflin* v. *Rosenberg,* 97 Am. Dec. 340 and note; *Conrad* v. *Smith,* 2 N. D. 408; *Morrison* v. *Oium,* 3 N. D. 76; *Grady* v. *Baker,* 3 Dak. 298. That the property was in possession of the hired man of the vendor, who had agreed to take care of the same for the vendee is not sufficient change of possession to give notice to creditors. *Flanagan* v. *Wood,* 33 Vt. 327. Plaintiffs' claim of ownership was inconsistent with their claim for lien thereon. It amounted to a repudiation, waiver or abandonment of their lien claim. *Picquat* v. *McKay,* 2 Blackf. (Ind.) 465; *Hudson* v. *Swan,* 83 N. Y. 560; *Everett* v. *Buchanan,* 2 Dak. 260; 13 Am. & Eng. Enc. L. 624, note 2; *Cox* v. *Harris,* 62 Am. St. Rep. 188.

BARTHOLOMEW, C. J. The opinion upon a former appeal may be found in 5 N. D. 476, 67 N. W. Rep. 951. We restate the facts as there stated: The plaintiffs are seeking to recover in replevin the possession of 5,600 sheep from the defendant, who, as sheriff, seized them on attachment against George M. Beasley & Co. The plaintiffs base their right to possession upon a factor's lien for a general balance due them from Beasley & Co. on account of advances made by them as commission merchants to Beasley & Co. under an agreement that Beasley & Co. were to purchase sheep, and consign them to plaintiffs, in the City of Chicago, to be sold by plaintiffs, as commission merchants, on account of Beasley & Co.; all the surplus, after reimbursing the plaintiffs for their advances and expenses in the business, and after paying their commissions on such sales, to be turned over to Beasley & Co. There was evidence tending to prove that on the 11th of April, 1893, Beasley & Co. were, and ever since that day have been, indebted to the plaintiffs in the sum of about $16,000. If at any time before their seizure under the attachment by defendant the sheep in question came to the possession of the plaintiffs under the arrangement between them and Beasley & Co., then there attached to them a factor's lien in favor of plaintiffs for the general balance due them from Beasley & Co. 1 Jones, Liens § 418. The contract between plaintiffs and George M. Beasley & Co. is undisputed, as is also the general balance due plaintiffs. It follows, then, that plaintiffs should recover, if they show that the said sheep had come into their possession as such del credere factors, unless they have waived their lien. At the close of plaintiffs' testimony the Court, on defendant's motion, discharged the jury, and dismissed the complaint. From this order, and the judgment entered thereon, the plaintiffs appeal.

Respondent defends this action of the Court, first, upon the ground that, on the record, plaintiffs had waived their factor's lien, if

any they had. This proposition is based upon the following condition of the record: On the first trial of this case the jury failed to agree. On the second trial, after the evidence was closed, the Court intimated that it might direct a verdict for defendant. Thereupon counsel for plaintiffs, while insisting that the complaint was sufficient to sustain all proofs, yet, to save any question, asked and obtained leave to amend the complaint by setting up absolute title in plaintiffs to 4,400 head of said sheep, alleging that they were bought by George M. Beasley & Co. with plaintiffs' money, and under an express agreement that they were to be plaintiffs' sheep. Some testimony was taken on the point. At some time during the trial one member of the plaintiff firm had given testimony strongly supporting the allegation in the amendment. The jury, however, found against plaintiffs on this point, but found in their favor on the question of lien. That verdict was set aside on the former appeal by reason of misdirection of the jury. We infer that no actual amendment to the complaint had been made, because, after the record was returned to the District Court, plaintiffs served upon defendant a copy of a proposed amended complaint, embodying the allegation of ownership, with notice of application to the Court for an order allowing the same. This order must have been granted, as subsequently there was an application by respondent for an order setting aside such order of allowance; and, while this last application was pending, appellants, by leave of Court, withdrew their proposed amendment, and offered another, returning to the claim in the original complaint as we construe it. Subsequently the Court set aside its order granting leave to amend the complaint, but making both proposed amendments a part of the record. That left the case to be tried upon the original complaint. But respondent urges that, by claiming as owner, appellants waived their factor's lien. As all the matters here urged as ground for dismissing the action appeared of record when the last trial commenced, orderly practice required the motion based upon such record to be made at that time, and not after more than a week had been consumed in introducing appellants' testimony. But appellants do not seek to take advantage of this delay, and we pass it, simply noting it to discourage such practice. We think, however, that the doctrine of waiver has no application to this case. It is a well settled principle that, where a party who has a lien upon property is in a proper manner and for a proper purpose placed in a position where it becomes his duty to disclose the nature of his claim, if then he conceal his lien and claim ownership, and the other party acts upon such statement, the lienholder cannot afterwards change his position to the detriment of such other party, and assert his lien. He waived or abandoned his lien by concealing the same and asserting a title inconsistent therewith. It acts by way of estoppel. Necessarily this must be true, because no man is denied the privilege of establishing the truth, unless to permit him to do so would work a legal injustice to some other party. In every case that has been

cited to us, or that we have found, where it has been held that a lien had been waived by a claim of ownership, such claim had been first made and acted upon before any claim under a lien was disclosed. A reference to a few of the cases relied upon will disclose the grounds upon which they are based. *Everett* v. *Saltus,* 15 Wend. 474, was trover for some lead. Defendants had a lien upon the lead for certain freight, but, when the lead was demanded, defendants stated that they had bought it and paid for it, and would not do anything about it. A second demand was made, with an offer to pay any lawful demands against the same, and defendants replied that they would have no further communication on the subject. As a defense to the action, the defendants sought to set up their lien, but the Court said: "But, if the defendants had a lien, they waived it by not putting themselves upon that ground when the property was demanded by the plaintiff's agent. They claimed the property as purchasers, and said they would do nothing about it. They denied the plaintiff's right, and set up a title in themselves independent of the lien. Under such circumstances, a tender of the freight and charges was unnecessary." In *Mexal* v. *Dearborn,* 12 Gray, 338, the Court say: "The law will not allow a party to insist upon and enforce in his own behalf a secret lien upon personal property after he has claimed it unconditionally as his own, and has thereby induced another to act in relation to it, in some manner affecting his own interest, as he would or might not have done if he had been openly and fairly notified of the additional ground of claim. It would be fraudulent in him to practice such concealment to the injury of others; and, to prevent the possibility of attempts so unjust becoming successful, the law implies that an intended concealment of that kind is of itself a waiver of the lien." The case of *Hudson* v. *Swan,* 83 N. Y. 552, was replevin for a horse. Plaintiff claimed as sole owner of the horse, but the evidence showed that he at one time had a lien on the horse. Subsequently he supposed he purchased it, but the authority of the party who made the sale was denied. The jury were instructed that, if plaintiff failed to establish ownership, he might still rely upon his lien. But the appellate court said: "At no stage of the proceedings did he concede the defendants' title and limit his claim to one as lienor. No opportunity was given to the defendants to discharge any such lien. The plaintiff denied its existence by claiming as sole owner, and down to the last moment maintained that claim, and submitted it to the jury, who found against him. He must, in this action at least, stand or fall upon that claim; and we think it was error to instruct the jury that he could fall back upon his alleged lien. Many of the authorities hold that such a claim absolutely extinguishes a right of lien, and that it cannot be revived." The case of *Fowler* v. *Parsons,* 143 Mass. 401, 9 N. E. Rep. 799, is the converse of those we have been considering, and serves to illustrate the grounds upon which courts proceed. The action was replevin, both parties claiming ownership by their plead-

ings. The evidence showed that defendant, believing that he was the consignee of certain goods, paid the custom duties which were a lien thereon. Plaintiff, knowing that defendant claimed the goods, stood by and saw him pay the duties, and then replevied the goods from him. It was held that plaintiff could not recover without paying or offering to pay the customs duties, and that defendant had not waived his lien for the same. In that case plaintiff knew of the existence of the lien, and was in no manner deceived or misled upon that point by defendant's claim of ownership; hence the lien was not waived.

In the case at bar, appellants, in bringing the action, based their right of recovery, not upon any claim of ownership, but upon a factor's lien, and upon that only. It was to that claim that defendant answered. The whole case was tried upon that theory. At the close of the case appellants, while protesting that their complaint was sufficient, and was supported by the proofs, yet, to avert a threatened prejudicial ruling, asked leave to amend their complaint by adding a claim of ownership as to a portion of the goods. This was objected to by respondent as inconsistent with the original complaint. Ultimately the Court took that view of it, and appellants withdrew their proposed amendment; thus leaving the issues exactly as they stood from the first. If appellants waived any rights in this case, it was the right to plead ownership. They concealed any such claim, based their recovery upon a lien, and forced respondent to the expense of two trials on that basis. The Court was right in excluding an amendment setting up title. But, if an attempt to plead ownership waived the right of recovery upon the lien, then the two claims have been mutually destructive of each other. We do not think any such result should be permitted. None of the reasons for a waiver of the lien apply in this case. Respondent was appraised of it from the first. He could not have been deceived after all the facts had been brought out upon two separate trials. He had every opportunity to pay the lien, if he so desired. He was induced to take no step prejudicial to himself by reason of offered assertion of ownership. There never was a moment, and he knew it, in which appellants were not insisting upon their lien. There could be no waiver under such circumstances. Learned counsel also cite in this connection *Wingard* v. *Banning,* 39 Cal. 543, and *Cox* v. *Harris,* 64 Ark. 213, 41 S. W. Rep. 426. These cases are more strictly cases of election of remedies. In each case a party had a lien upon specific personalty, in one case dependent upon possession, in the other by mortgage. In each case he disregarded his lien, brought suit upon his claim, and attached the specific property. Failing to realize in attachment, he afterwards sought to claim under the lien; and it was held in each case that he had waived his lien; or, rather, that he had two inconsistent remedies, and, having elected to pursue one, he could not afterwards pursue the other, and that his first election was conclusive. Applying the principle of those cases to the case before us, we should say

that, instead of having waived their lien claim, appellants are necessarily confined to that claim. Having, in bringing this action, elected to claim under a lien, they cannot make an inconsistent claim of ownership.

But respondent further contends that the action of the Court in taking the case from the jury must be sustained upon the ground that appellants had entirely failed in their proofs. This Court has expressly repudiated the scintilla rule. *Fuller* v. *Elevator Co.*, 2 N. D. 220, 50 N. W. Rep. 359. To sustain a verdict, it must appear that it might have been reached by a jury in the exercise of an unbiased and unprejudiced judgment; and, on the other hand, where a case is taken from the jury, the defeated party has a right to have everything regarded as proven that his evidence has any fair tendency to establish. We recite some of the facts briefly: About April 10, 1893, George M. Beasley & Co. loaded 20 car loads of sheep on the cars of the Northern Pacific Railroad Company at Rosebud, Mont., and forwarded them to Dickinson, N. D. The day following the Beasleys shipped 20 additional cars of sheep by the same carrier from Rosebud to Dickinson. At the time of the last shipment, April 11, 1893, a bill of lading was issued by the agent of the railroad company at Rosebud which recites the receipt of 40 car loads of sheep from George M. Beasley & Co., consigned to appellants at Dickinson, N. D. This bill of lading was at once forwarded by mail by the Beasleys to appellants at Chicago, and was duly received by them. It is contended now, as it was upon the former appeal, that the delivery of this bill of lading to the consignees placed the sheep in their exclusive possession. We need not stop to discuss the general rule that fixes the factor's lien the moment he obtains exclusive possession as such factor. Respondent claims that the rule does not apply in this case, because there were shipping contracts issued. which were noted on the bill of lading, and which must be considered therewith. Under such contract, the shippers were to remain in possession and accompany the stock and have charge of the same; and it seems that this was in fact done in this case. But we need not discuss the question whether or not, as between consignor and consignee, the possession could pass to the latter under these circumstances; nor need we discuss whether or not the appellants, conceding that they received the sheep, received them as factors; nor need we discuss certain parol evidence tending to show that the Beasleys employed certain persons for appellants, and placed them in charge of the sheep. In our judgment all these matters are here immaterial, because, conceding that appellants once had possession, we are all agreed that they subsequently lost and surrendered such possession. It stands undisputed in this record that early in June, 1893, said sheep were on the order of W. W. Beasley, a member of the firm of George M. Beasley & Co., driven from their feeding grounds, which were 35 or 40 miles distant from Dickinson, to the immediate vicinity of that place; that W. W. Beasley purchased lumber and erected sheds, hired 10 or 12

men, and had all of the sheep sheared. The time required was about two weeks, and Beasley paid all the expenses connected with the shearing. He sacked the wool, amounting to 60,000 pounds or over, and shipped it in his own name to a firm in Boston, Mass., and received not less than $6,000 therefor. These undisputed facts show conclusively that the Beasleys were at that time in actual possession of the sheep for their own purposes, in their own interests, and for their own benefit, and in no sense of the word as agents for appellants. True, W. W. Beasley testifies that Joseph Rosenbaum told him to have the sheep brought in and sheared; but such fact only makes the case stronger against appellants, as it shows that, if appellants had possession, they voluntarily surrendered the same, and that the Beasleys did not retake possession fraudulently or surreptitiously. Further, after the sheep were sheared, they were returned to the herders, who seem to have implicitly obeyed the Beasleys in all matters pertaining to the sheep, and driven back to their feeding grounds. In July George M. Beasley caused about 2,600 of said sheep to be selected out and driven to Dickinson, and shipped to appellants. There is no pretense that this shipment was made by appellants, or by their direction or request. It was an unequivocal act of possession and ownership on the part of the Beasleys. These actions are unexplained in this record, and their force is irresistible. True, it is not every temporary deprivation of possession that will defeat a factor's lien dependent upon possession. The property may be seized on legal process, or taken by fraud or force. This will not defeat the lien. It can only be defeated by some act of the factors, and he may temporarily relinquish custody, if he retain control. Mechem, Ag. § 1037, and cases cited. Possibly he might allow the principal to have temporary possession under an express agreement reserving the lien, without losing his rights as between the parties. 1 Jones, Liens, § 468. But none of these exceptions can aid appellants upon this record. We are clear that no verdict in favor of appellants, based upon any possession upon their part prior to August 4, 1893, could have been sustained; hence to that extent the Court was correct in taking the case from the jury. But, by reason of matters yet to be considered, the case must be reversed, and we have considered the possession thus far in order to eliminate useless matter from the case upon the next trial.

Appellants placed one P. J. Smith upon the witness stand, who, it was shown, was the general western agent of appellants in looking after their live-stock interests in Montana and North Dakota. This witness testified that, as such general agent, he received from George M. Beasley, on August 4, 1893, a writing as follows: "I this day turn over to Rosenbaum Bros. & Co. all of my sheep, which is about six thousand (6,000) head, now ranging on the Cannon Ball. Sheep are all branded with a red bar on back, thus |. George M. Beasley & Co." When this instrument was offered in evidence, respondent objected to its introduction upon the ground that it was

immaterial under the pleadings, and did not tend to show that plaintiffs were in possession or entitled to any factor's lien. The objection was sustained. This was error. It is true the complaint alleges that appellants obtained possession of the sheep under and through the bill of lading hereinbefore mentioned, but it also declared: "And plaintiffs further allege that, in addition to the said factor's and merchant's lien and bill of lading by which the said plaintiffs hold said sheep, it was expressly agreed, by and between the firm of George M. Beasley & Co. and plaintiffs, the firm of Rosenbaum Bros. & Co., that the firm of Rosenbaum Bros. & Co., plaintiffs, should have a lien as commission and merchant factors on said sheep for the general balance of sixteen thousand one hundred and sixty-three dollars and seven cents, and the said sheep were transferred to, and the possession of said sheep was transferred to, the said firm of Rosenbaum Bros. & Co., and said sheep were in the possession of said Rosenbaum Bros. & Co. at the time they were attached as hereinafter stated." Under this allegation, the exhibit should have been received. There was other evidence in the case tending to show that appellants were the factors of George M. Beasley & Co., that there was a large balance due them as such factors, and that they were entitled to a lien upon the sheep by express agreement, once the sheep came into their possession as such factors. This witness further testified that he had ordered 30 cars for the shipment of the sheep; that, after receiving such writing, he went to the herding grounds in company with one of the Beasleys, and ordered the herders to drive the sheep to the railroad; that they at once proceeded to do so; and that when they were within three or four miles of Dickinson, and while so obeying the orders of the witness, the sheep were seized by the defendant. It does not specifically appear that the herders knew who this P. J. Smith was or who he represented. But the evidence tends to show that they at once recognized his authority and proceeded to execute his orders. It tended to show that when the sheep were seized by respondent they were in the actual possession of P. J. Smith, as the general agent for appellants, for the purpose of immediate shipment and sale by appellants as the factors of George M. Beasley & Co. Appellants were entitled to go to the jury upon this evidence. There must be a new trial. Reversed. All concur.

## ON REHEARING.

Respondent asks a rehearing upon the last proposition discussed in the foregoing opinion, and in an erudite petition he seeks to show that there was no evidence of possession upon which appellants were entitled to go to the jury. The question of possession is a question of fact, to be decided, ordinarily, by the jury. Whether or not there is any evidence in a case upon which a jury would be warranted in finding possession in a designated party is a preliminary question upon which the Court may properly pass. But the fallacy in respondent's reasoning consists in the fact that he

constantly places upon the testimony the most favorable construction that it will bear for respondent, and from that standpoint insists there is no evidence in the case upon which the appellants were entitled to the verdict of a jury, forgetting that it is our duty to place upon the testimony the most favorable construction for appellants that it will bear, and to regard all those facts as established which the evidence tends to prove. We do not care to add to what we have said concerning the admissibility in evidence of Exhibit 82. It was not intended to convey title, or to convey a right to a lien. The rights to the lien already existed, if once the factor came into possession. The evidence on that point is overwhelming, and the exhibit tends strongly to prove that the Beasleys had surrendered their possession and all right to control. It may be true that when it was executed both appellants and the Beasleys supposed that appellants were already in possession under the bill of lading. We have held that, as matter of law, they were mistaken in that; but that did not prevent appellants from subsequently acquiring possession, or the Beasleys from surrendering possession. The evidence tends to show that they executed the exhibit as evidence of such surrender, and it should be given effect accordingly. We have said that the factor's possession must be exclusive, but that does not mean that it must be actual and personal. Delivery by the owner to any person for the factor enables the factor's lien to attach at once, whether the delivery be to a common carrier, ship owner, warehouseman, or agent. 1 Jones, Liens, § 460. And the delivery may be constructive as well as actual. "It is only necessary that the goods should be so appropriated to the factor that they are assuredly under his control." Id. § 461. Learned counsel cite the case of *Flanagan* v. *Wood*, 33 Vt. 333. The first paragraph in that opinion declares: "The doctrine that an actual and visible change of possession must accompany every attachment and transfer of personal property was early adopted in this state, and has been steadily adhered to. It has been treated as our settled policy, and the business habits of our citizens have been conformed to it. Under our system of attachment, its practical application is of frequent occurrence, and numerous decisions of our courts have defined and illustrated its operation. From a rule of law so well settled, and so well understood and relied upon by the community, we are not at liberty to depart. The decisions in this state must therefore be our guide, and we can derive but little aid from the decisions which in other states and in England have materially qualified or altered the law in this respect." The Court then proceeds to hold, in a case where the facts are somewhat exceptional, but could readily be distinguished from the case at bar, that there was not that actual and visible change of possession which their law required. The case of *Gray* v. *Corey*, 48 Cal. 208, is also cited. The case is exceptional in its facts, and probably would not be followed now. It arose between a vendee and a creditor under a statute which declared all transfers of personalty fraudulent as to creditors, unless

followed by actual, immediate, and continued change of possession. These cases are not here applicable. A factor's lien depends upon the fact of possession, and not the appearance. Rev. Codes, § 4836. Our statute is like that of New York, and there it is held that possession means "such control of, or dominion over, merchandise as enables a factor rightfully to take it into actual custody without the aid of any new authority or document furnished by the owner." *Pegram* v. *Carson,* 10 Bosw. 505. The rule as between a vendee and creditor has been stated by this Court as follows: "What the law requires, and all the law requires, is that the conduct of the parties should clearly show a relinquishment of ownership and possession, and all right of control on the part of the vendor, and an assumption of ownership, possession, and control on the part of the vendee." *Morrison* v. *Oium,* 3 N. D. 76, 54 N. W. Rep. 288. How stood the parties under the evidence? That the Beasleys had surrendered all legal right to possession and control must be conceded. We think it must also be conceded that, the Beasleys having surrendered the right of possession and control to appellants, appellants had the legal right to take the property into actual custody without the aid of any new authority or document from the Beasleys. Had appellants done so? We undertook in the original opinion to show that such was the tendency of the evidence. Counsel insist that what was done by way of driving the sheep in was done in pursuance of the orders of the Beasleys. Possibly the evidence may bear that construction; but it will certainly bear the construction we gave it, and duty compels us to adhere to it. It is urged, however, that, as matter of law, the possession remained in the Beasleys, because the same herders (Beasleys' servants, it is claimed) that had been in possession remained in possession, and in this connection counsel rely upon *Flanagan* v. *Wood* and *Gray* v. *Corey,* in both of which the fact that the former servants of the original owner remained in charge was held to preclude the claim that there had been any visible change of possession. We have endeavored to show that the matter of visible change does not apply in this case or in this state. As between a vendee and an attaching creditor, an entire want of change of possession would not be conclusive as against the vendee. Rev. Codes, § 5053. A factor is in a worse position than a vendee, in that his lien depends upon possession; but, so far as visible appearances are concerned, he should be in no worse position, and the bona fides as between the Beasleys and appellants cannot be questioned upon this record. But were these herders the servants of the Beasleys? It does not appear that respondent knew they were or had any reason to so suppose. But it does appear, and must be held as established, that these herders had been employed by the Beasleys for appellants in April, and had so continued, and appellants paid them for their services during all that time. They never were the Beasleys' servants after they came into this state.

The fact that we hold that the sheep were in the possession of the Beasleys for a certain term does not change the contract of employment with the herders. But we are not prepared to go upon record as holding that, if these herders were in the Beasleys' employ up to August 4th, and were found on August 7th, with the same sheep in their possession, many miles distant from the place where they were on the 4th, such fact establishes, as matter of law, that there had been no change in the possession of the sheep. Rehearing denied.

(79 N. W. Rep. 987.)