Walter THOMPSON, Plaintiff and Appellant,

v.

HANNAH FARMERS COOPERATIVE ELE-
VATOR COMPANY, a corporation,
Defendant and Respondent.

No. 7600.

Supreme Court of North Dakota.

Oct. 25, 1956.

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiff and appellant.

Snowfield & Snowfield, Langdon, Traynor & Traynor, Devils Lake, for defendant and respondent.

JOHNSON, Judge.

On July 14, 1954, the plaintiff commenced an action against the defendant to recover for 840 bushels of flax valued at $6 a bushel, which he claims he hauled to the defendant elevator on the 4th and 5th of November, 1948. Just after the commencement of the trial the plaintiff requested leave to amend his complaint by changing the number of bushels for which he claimed recovery from about 800 bushels to about 1,100 bushels.

The amended complaint, if one was ever drawn, was never filed and is not a part of

the record before us. However, as we shall see later, that becomes an immaterial matter.

The defendant answered denying the allegations of the plaintiff's complaint. It admitted that the plaintiff, prior to November 1948, delivered flax to the defendant elevator and alleges that such flax was paid for in full. The defendant also asserts that if any other flax was delivered by the plaintiff to the defendant in the fall of 1948, which had not been sold by the plaintiff, the defendant would be entitled to a warehouseman's lien for storage, handling and other charges prescribed by law. It also asserts that at no time has the plaintiff presented any receipt or warehouseman's receipt either demanding a return of the grain or asking for a sale thereof, nor has he offered to satisfy any warehouseman's lien to which the defendant might be entitled if the flax had been delivered as alleged by the plaintiff.

At the time that the plaintiff requested leave to amend his complaint it was stipulated and agreed that the answer of the defendant would stand as its answer to such amended complaint.

The case was tried to a jury. The defendant at the close of the plaintiff's case made a motion for a directed verdict. This was resisted and the motion denied. Thereupon the defendant made a motion for a dismissal of the action. The motion was granted and the case dismissed and the jury discharged.

The defendant in anticipation of a complete trial of the action had subpoenaed a number of witnesses. The judgment of dismissal includes costs taxed and allowed the defendant in the sum of $194.60. The plaintiff has appealed to this court from the judgment. He has specified five errors as a basis for appeal. However, he argues only two. First, did the court err in dismissing the plaintiff's action? Second, did the court err in entering judgment for $194.60 for costs?

Section 28–0801 NDRC 1943 covers the dismissal of civil actions without prejudice. Subsection 3 thereof provides:

"By the court when, upon the trial and before the final submission of the case, the plaintiff abandons it or fails to substantiate or establish his claim, cause of action, or right to recover".

It is the contention of the defendant that no competent evidence has been presented to establish a cause of action in favor of the plaintiff, and that, therefore, the plaintiff has failed to prove a cause of action.

The judgment of dismissal is on the merits with prejudice.

The first question for our determination is whether or not there was any substantial evidence before the court requiring that the case be submitted to the jury. If there was any substantial evidence to submit to a jury, it was error for the court to dismiss the case with prejudice at the request of the defendant. If, however, there was no substantial evidence before the jury when the plaintiff rested, if it was error to dismiss the action, it was error without prejudice and will not be disturbed upon appeal.

The plaintiff's cause of action is based wholly upon his oral testimony, and documentary evidence introduced as a part of his cross-examination, and the testimony of the manager of the defendant called for cross-examination under the statute.

■ Ordinarily, the weight of the evidence and the credibility of the witnesses, in a jury case, are for the jury.

The plaintiff, Walter Thompson, is a farmer living between Sarles and Hannah, North Dakota, where he operates about 1,300 acres of land. On November 4, 1948, he consummated the purchase of some land from a man named Shaw. On the basis of that date he claims to remember that he started straight combining flax which he seeded in the spring of 1948 on a 79-acre

tract, of which 67 acres is under cultivation, in the North Half of the Northwest Quarter (N½NW¼) Section 32, Township 164 North of Range 63 West of the 5th P.M. He claims his brother, Wellington Thompson, hauled in one load on November 4th. The next day the plaintiff says he hauled in 5 loads to the defendant. He said that he received scale tickets for the flax delivered to the defendant on the 4th and 5th of November. He did not produce these and offers various explanations as to this failure. His first explanation is as follows:

"Q. Did you at any time go home and look for storage tickets? A. He (referring to Tollefson, the manager of the elevator) said there was none, had to present storage tickets, unless I could bring in my tickets for two years, I told him that the first we threshed had them in pocket, had been washed, four tickets in there, but I could not get them, he had assembly sheets, had that at home, outside of that fact, if you haven't got tickets no good."

From this testimony it is apparent that the plaintiff is attempting to quote Mr. Tollefson with reference to the requirement to present a scale or storage ticket as evidence of the fact that the elevator was supposed to have in its possession grain unaccounted for by the defendant belonging to the plaintiff. The inference of the testimony is that the scale tickets may possibly have been washed. Later he offers another explanation.

"Q. Did you at any time in 1948 and 1949 have your storage tickets at home? A. Well, no, not exactly have everything because I knowing Gordon, how he did, figure there was mistake at elevator he would find it."

While this answer is not responsive to the question, it does indicate that the plaintiff had confidence in the elevator manager to find any evidence of any kind that he

might own flax which had not been accounted for by the defendant. The witness does claim that he went back to the elevator about every two weeks during the winter of 1948–49 to look for evidence of flax, but found nothing. He also says that he was told by the manager that if he had any grain in the elevator that it would show up in the audit of the elevator records. It did not show up in the audit. The plaintiff alleged that the last conversation he had with the defendant's manager was sometime in June 1949; that he made no further inquiry concerning the flax until sometime in August 1953. As to that incident he offers a disjointed, somewhat incoherent, and rambling explanation of the search that was made and the records examined, and the failure to find a record of the flax. He was then asked:

"Q. This was conversation you had? A. Between I and Gordon.

"Q. August of 1953? A. This was August 1953, ya. And Willard come back, (referring to Willard Thompson, who had gone to another elevator owned by the defendant and about 80 feet south of the main elevator) said I can't find different book over there, could not find it, says I will go and get it, he was gone for—

"Q. Who said that? A. Gordon, he went and was gone for approximately 20 minutes, he came back again and he said I can't find that book either, and he said I am really busy, haven't time to spend any more time, you come back again and I will have it, when I came back again had not found it, but said he was still looking, so next time I went back I asked him if he had found the book yet, he said no, I said— Gordon, you haven't found that book, he said—how do you know—*I said I dreamed about it, saw some rats plain as day running away with that book.*

"Mr. Traynor: What? A. Saw some rats as plain as day running away

with that book, you haven't got that book, since then he hasn't found it."

Up to this point it will be noted that the plaintiff claims that he hauled the flax into the elevator on November 4 and 5, 1948; that he did receive scale tickets; but the scale tickets are either destroyed or lost; that they may possibly have been washed; that although a search was made in the elevator records for duplicate scale tickets for the specific dates in question, none were located. To account for that peculiar situation the plaintiff asserts that the book in which the duplicates were to be found was carried away by the rats. He reiterated this same explanation in a letter written March 24, 1954, to the Public Service Commission. He also repeated it on cross-examination.

As to the amount of flax that he had hauled to the defendant on the dates involved, he said:

"Well the loads as I hauled, know the first load was about, heaped up, when I started in I took smallest one in, it was around 104, 204 bushels, and when I came back with empty truck, boys had been combining, run out then, unloaded part, took 9, 10, 12 bushels, off about, still left me around 103 to 105—203 to 205."

This explanation is also somewhat disjointed, rambling and indefinite. He estimates that his first load amounted to 204 bushels. The other loads were somewhat less as he took from 9 to 12 bushels off them and still they amounted to 203 to 205 bushels per load. This is a typical example of the testimony offered by the plaintiff during the trial. His final estimate of the total amount of flax hauled to the defendant was 1,164 bushels, but that it might be a few bushels one way or the other. He did not know the dockage although he did estimate that his first load hauled by Wellington Thompson had about 16 percent dockage and that the other loads were any-

where from 6 to 9 percent dockage. When he was asked about the price of flax, without specifying a date or showing any reference to any market report, or without any other foundation, he was allowed over objection to testify that the government had "set the price on flax at $5.65."

The above constitutes a summary of the plaintiff's direct examination. On cross-examination the plaintiff admits that straight combining could not be done when there was any appreciable amount of moisture in the air. From documents admitted as a part of the plaintiff's cross-examination the evidence shows that it rained varying amounts in both Sarles and Hannah, North Dakota, the first five days of November, 1948. The evidence also shows that the temperature was much lower than estimated by the plaintiff, and that both maximum and minimum temperatures covering the first five days of November were not conducive to rapid evaporation of moisture.

The plaintiff was confronted with the following news item taken from the Western Cavalier County Advocate, a weekly newspaper, published at Sarles, North Dakota, dated Thursday, November 4, 1948:

"Rain continues to fall today and no letup is in sight. Rain started falling Monday and the country is pretty well soaked up."

He asserted that the newspaper item was wrong.

On further cross-examination he made still another explanation as to his alleged shortage of money or his inability to account for the flax involved in this action. He said:

"I figures the mistake must have been made at bank, knew he was short on me, I couldn't figure out just how mistake was made, when it went all through audit never found it, know mistake was there, until I traced it back to find the certain date—

"Q. What date? A. Well I had hearing with those fellows on Shaw place.

"Q. Had trouble on Shaw place? A. Yes, gave two checks on fourth of November.

"Q. What year? A. 1948, and one of the checks was, shows it was cashed on third and one shows it was cashed on fourth, and I gave them both on same day."

From the above it is apparent if any mistake was made, plaintiff did not know how it occurred.

In a further and another attempt to account for the loss of the scale tickets covering the flax, the subject of this action, the plaintiff said that he was checked by the Internal Revenue Department in February 1952 and he says that he carried everything up to the Internal Revenue Inspector including the scale tickets.

The plaintiff was then confronted with his wheat allotment report for 1948. His acreage report for 1948 is dated April 21, 1949, and is certified to by the plaintiff as true and correct according to the best of his knowledge. It shows that the acreage that he claims he seeded to flax in 1948, to wit the 67 acres of cultivated land in the N½NW¼ Section 32–164–63, was seeded to barley. Mr. Thompson did haul some barley to the defendant elevator in the fall of 1948 and received a settlement therefor on or about November 17, 1948.

On March 24, 1954, the plaintiff wrote the Public Service Commission claiming that he was short some money. He referred to the flax which he alleges he had hauled in to the defendant elevator on November 4 and 5, 1948. Some of the statements contained in his letter are at variance with his oral testimony. For instance he claims that the flax loads averaged about 180 bushels. He also states that the price per bushel was about $6.50.

In his letter of March 24, 1954, to the Public Service Commission the plaintiff alludes to the disappearance of the scale book of the elevator:

"Now the only thing that I figure could of happened that the rats could of taken the scale book at the elev when he had left it on the scales which he had warned his men to never leave any papers in the drive and to take them in the office as soon as they were through waying. Well the rats could take the scale book but they would not take that much flax and the Elev must of found it all ready by this time but if not it must be in the Elev yet."

The plaintiff called a witness by the name of Morris Howett to establish the date when he hauled the flax in question into the elevator. But the witness did not remember the dates, although he did remember that the plaintiff had hauled some flax to the elevator in the fall of 1948. The plaintiff did haul flax to the elevator the last part of September and the first day of October, 1948. This witness had also hauled flax to the elevator the same fall and received a settlement therefor on October 23, 1948.

The evidence clearly establishes that the plaintiff failed to prove a cause of action against the defendant. His testimony upon matters vital to his cause is contradictory and improbable. He had the burden of proof.

■ While there is no set formula for determining the quantum of evidence required, each case being governed by its own circumstances, a verdict or findings must be supported by substantial evidence. 32 C.J.S., Evidence, § 1042, p. 1123. Under the above mentioned rule, according to the decisions, a scintilla of evidence is not sufficient. That is the rule in North Dakota. Fuller v. Northern Pacific Elevator Co., 2 N.D. 220, 50 N.W. 359, rejected the scintilla theory of submitting cases to the jury. It held that the conflict in the evi-

dence that prohibits a court from interfering with the verdict of the jury upon a question of fact should be substantial and not an illusory conflict. See also Duncan v. Great Northern Ry. Co., 17 N.D. 610, 618, 118 N.W. 826, 829, 19 L.R.A.,N.S., 952; Rosenbaum v. Hayes, 8 N.D. 461, 79 N.W. 987.

■ The right to the submission of an issue of fact depending upon the credibility of a witness does not exist where the testimony is inherently incredible or impossible or where the undisputed circumstances show that the story told by the witness cannot be true, or that it is so improbable, absurd and self-contradictory that it should be deemed a nullity by the court. Where the inherent improbability of the evidence is so patent that no truth can be in it, the question is one of law. That is also the case where it is so inherently weak that reasonable minds could not entertain different opinions about it. 88 C.J.S., Trial, § 214, p. 491; City of Ludlow v. Albers, 253 Ky. 525, 69 S.W.2d 1051; Willis v. City of Browning, 179 Mo.App. 233, 166 S.W. 1070. The rule that it is for the jury to reconcile conflicting testimony of a witness does not apply where the only evidence in support of a controlling fact is that of a witness who so contradicts himself as to render findings of fact a mere guess. State ex rel. Mochnick v. Andrioli, 216 Iowa 451, 249 N.W. 379. Where a witness' testimony is itself so contradictory that it has no probative force, a jury cannot be invited to speculate about it or to select one or another contradictory statement as a basis of a verdict. Kaufman, by Deutch v. Baltimore Transit Co., 197 Md. 141, 78 A.2d 464. See also Hebert v. Boston & M. R. R., 90 N.H. 324, 8 A.2d 744.

In the recent case of Werner v. Miller, Minn., 78 N.W.2d 63, 65, the court quotes from Olsen v. Hoffmann, 175 Minn. 287, 221 N.W. 10:

"'* * * The testimony of a witness may be disregarded if it contains inherent improbabilities or contradictions, which, alone or in connection with the other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true.'"

■ It is only where the facts bearing upon the issues are in dispute, and the evidence offers room for reasonable difference of opinion, that the issue is for the jury. Where the evidence permits but one reasonable conclusion, the question should be determined by the court as one of law. Paulsen v. Modern Woodmen of America, 21 N.D. 235, 130 N.W. 231; State Bank of New Salem v. Bismarck Elevator & Investment Co., 31 N.D. 102, 153 N.W. 459; Hollandsworth-Hart Lumber Co. v. Bismarck Elevator & Investment Co., 31 N.D. 107, 153 N.W. 461.

Where the evidence is in conflict and reasonable men might draw different conclusions therefrom, the question is one for the jury. But before there is any need for submission of a cause to a jury, the evidence offered as to the ultimate facts must be such that by the application of normal intellectual faculties of reasonable men, they might by customary and normal processes of reasoning arrive at different judgments or conclusions. General Tire & Rubber Co. v. Hamm, 69 S.D. 72, 6 N.W.2d 442.

Where the evidence is such that it merely makes it possible for the facts in issue to be as alleged or it raises a mere conjecture, surmise, or suspicion, it does not constitute a sufficient foundation for a verdict and should not be left to the jury. Scherer v. Schlaberg, 18 N.D. 421, 122 N.W. 1000, 24 L.R.A.,N.S., 520; State Bank of New Salem v. Bismarck Elevator & Investment Co., supra; Hollandsworth-Hart Lumber Co. v. Bismarck Elevator & Investment Co., supra.

Can it be said that the evidence in this action is such that by the application of

normal intellectual faculties thereto, it would be possible for reasonable men to arrive at but one conclusion? Any verdict that a jury might render in this action would have to be based upon conjecture, surmise, suspicion and inherent improbabilities.

The plaintiff comes into court and attempts to establish a cause of action against the defendant based on his own oral testimony without support or corroboration. He brought this action nearly six years after the claim which he is attempting to establish had accrued. He says he received scale tickets for the flax hauled on the 4th and 5th of November 1948 to the defendant elevator. He offers contradictory explanations as to his failure to produce them. He intimates that they may have been washed with his clothes. Later he asserts that they were given to the Internal Revenue inspector. No explanation is made, nor is there any evidence in the record as to whether any attempt was made to contact the Internal Revenue Department to locate these alleged scale tickets. Although the plaintiff asserts that he asked about the flax several times during the winter of 1948 and 1949, he never made a formal demand for either a sale of the flax or a return or redelivery thereof.

The plaintiff and the elevator manager and his employee made a search of the books of the elevator in August 1953, and could locate no record covering the flax that the plaintiff has made the subject of this action. During all of the years, 1948 up to 1953, the plaintiff patronized the defendant elevator.

The evidence shows that the plaintiff is uncertain as to what caused his alleged shortage of funds. He intimates that it might be the result of an error at the bank. He admits that he never had or requested a storage ticket.

The defendant has no record to show deliveries of flax on November 4 and 5, 1948.

To attempt to explain away the lack of this record, the plaintiff offers the absurd explanation that the rats carried away the particular book of scale tickets covering his flax. The defendant's manager positively testifies that the plaintiff did not deliver any flax to the defendant on the dates in question. The inability of the manager and of the plaintiff to find any such record indicates the truth of the manager's statement.

The evidence shows that the plaintiff did deliver and receive a settlement of flax hauled to the defendant elevator the last two days of September and the first day of October; that settlement was made on the 4th of October 1948 and discloses that a $6,000 check was issued to the plaintiff to repay a loan made to him by the elevator and a check for $503.75 for the balance.

The weather conditions in the vicinity of the plaintiff's farm during the time in question were such as to make it impossible to straight combine flax on the days he specified.

Although the plaintiff in his communication to the Public Service Commission said that he had two combine men, his brother, and three or four men in town who remembered when he hauled this flax to the defendant, none of them were called to substantiate the plaintiff's testimony.

The most glaring contradiction in the plaintiff's testimony comes from his wheat allotment acreage report. The flax for which he is making claim is supposed to have been raised in 1948 on the $N\frac{1}{2}NW\frac{1}{4}$ 32–164–63 west of the 5th P.M. On April 21, 1949, the plaintiff signed and certified to the crop acreage seeded by him. His report shows that the tract on which he claims he produced the flax was seeded to 67 acres of barley. This report was signed and filed within six months after he claimed he delivered the flax to the defendant. Thus the evidence elicited from the plaintiff on cross-examination without objection

negatives his prior testimony. No explanation was offered to refute the acreage report. The oral testimony of the plaintiff and the acreage report are in conflict. Both cannot be true. It will be remembered that the plaintiff did raise barley in 1948; that he hauled some of it to the defendant elevator and obtained a settlement on or about November 17, 1948.

Testimony as to the amount of flax involved, the price thereof, the dockage involved and other elements that would enable a jury to arrive at some accurate basis upon which to render a verdict, if they did believe the plaintiff's evidence, is indefinite.

It is common knowledge that few men, if any, are so careless in the handling of their personal affairs that they remain more or less indifferent for a period of nearly 6 years to a loss of over $6,000. It is also common knowledge that a public warehouseman, which includes an elevator, Section 60-0201(3) (a) NDRC 1943, keeps a duplicate record of scale tickets. He is required by statute to do so. Section 60-0211 NDRC 1943. His failure to do so is a misdemeanor. Section 60-0212 NDRC 1943.

A close examination of the evidence indicates that even upon many minor matters, as well as the essential facts, the testimony of the plaintiff is contradictory, inaccurate, incoherent, evasive, irresponsive and improbable. There is no substantial evidence to establish the plaintiff's cause of action.

The evidence in this case is so contradictory and inherently improbable that reasonable minds could not entertain different opinions thereon and could arrive at but one conclusion, that the plaintiff did not on November 4 and 5, 1948, haul over 1,100 bushels of flax to the defendant.

In the case of Thoreson v. Hector, 54 N.D. 651, 210 N.W. 169, 171, the trial court directed a verdict for the plaintiff over defendant's objection. The defendant had also moved for a directed verdict but coupled his motion with a demand that if it was denied that the issue be submitted to the jury. The court in discussing this said:

"There was, however, no evidence on which a verdict for the defendant could have been based. Chapter 133, Sess.Laws 1921, requires the court, when objection is made to granting a motion for a directed verdict, to 'submit to the jury such issue or issues, within the pleadings on which any evidence has been taken.' In other words, the law contemplates an issue of fact. If there be no issue of fact, there is nothing that can be submitted. Certainly it cannot be reversible error to do in advance that which must inevitably be done after an erroneous verdict; namely, to order the only judgment which can be entered in view of the evidence."

If the issue here had been submitted to a jury and it had brought in a verdict for the plaintiff it would clearly have been the duty of the trial court upon proper motion for judgment notwithstanding the verdict, to set it aside and dismiss the case. In the case of Rattie v. Minneapolis, St. P. & S. S. M. R. Co., 55 N.D. 686, 692, 215 N.W. 158, 160, this court said:

"Since the plaintiff's evidence shows affirmatively that he has no cause of action, the granting of defendant's motion to dismiss, and the entry of judgment on the merits thereon, a practice not to be approved under Chapter 133, Session Laws 1921, if error, was error without prejudice, and will not be disturbed on appeal."

See also Belt v. City of Grand Forks, N.D., 68 N.W.2d 114; Ouren v. Friswold, 55 N.D. 664, 215 N.W. 160; Romkey v. Barnes, 72 N.D. 127, 5 N.W.2d 79; Ells-

worth v. Martindale-Hubbell Law Directory, 69 N.D. 610, 289 N.W. 101, 103. In this last case the court said:

"The ultimate question is still the effect of the error on the rights of the party against whom it was committed. If he is not injured he is not prejudiced, and these proceedings should not be prolonged through another trial which could not bring about a different result."

■ That is the situation here. The plaintiff was not injured by the dismissal of his case. He had failed to establish a cause of action. The dismissal, if error, was error without prejudice to him and will not be disturbed on appeal.

There remains but one other issue, the cost judgment of $194.60. The defendant had subpoenaed eleven witnesses, all of whom were in attendance from 1 to 3 days at the trial. Upon the motion objecting to the witness fees, mileage, and other costs taxed against the defendant, they were approved by the trial court.

■ Examination of an adverse party, before trial, may be had under Section 31-0203 NDRC 1943 as amended by Chapter 214 of the 1955 Session Laws. The taxation of the cost of the transcript of such examination is within Section 28-2606(2) NDRC 1943 which allows taxation of necessary expenses for taking deposition and procuring evidence necessarily used or obtained for use on trial. The plaintiff's testimony taken by the defendant before trial was to be used at the trial. It was offered by the plaintiff and is Exhibit 2.

■ It is contended that the witnesses were subpoenaed to harass the plaintiff. There is no proof of that contention. As the case developed the defendant did not need to present any evidence and his witnesses were not needed. Under the weight of authority a party is not necessarily precluded from taxing costs for witnesses because they did not testify in the case; and the fees of witnesses subpoenaed but not heard may be taxed against the unsuccessful parties where they were subpoenaed in good faith and not with intent to oppress, and did attend court in compliance with such subpoena, and their testimony was deemed material to the issues involved. 20 C.J.S., Costs, § 227, p. 469.

The case of Berry v. City of Helena, 56 Mont. 122, 182 P. 117, held that where a nonsuit is granted rendering the testimony of the witnesses subpoenaed unnecessary, the defendant being required to be prepared to meet the issues raised by the plaintiff, the disbursements necessarily incurred in procuring the attendance of witnesses was within the contemplation of the statute. Such is the case here. See Sections 28-2606 NDRC 1943 and 31-0116 NDRC 1953 Supp.

The trial court commenting upon the costs said:

"The court is satisfied beyond any question that the witness fees and mileage listed in the bill of costs were all made in good faith and were all made because it was anticipated that these witnesses would be necessary to a successful trial of the case."

We agree with the trial court. The costs were taxable against the plaintiff.

The judgment of the trial court is affirmed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.